DARRELL FARMER, Plaintiff-Appellee, v. RICHARD McCLURE *et al.*, Defendants-Appellants (The Civil Service Commission, Defendant).

First District (2nd Division)   No. 87—3657

Opinion filed June 28, 1988.—Rehearing denied July 26, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellants.

Wahler, Pecyna & Fleming, of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendants Richard McClure and Michael Tristano, former and current Directors of the Illinois Central Management Services (CMS), appeal from a *mandamus* order and a mandatory injunction commanding plaintiff's certification as an apprehension specialist employed by the Illinois Department of Corrections (DOC); restoration of all benefits as though he had worked continuously since his discharge, including an award of full back pay; and restraining defendants from enforcing the order of plaintiff's discharge. Defendants also appeal denial of their motion to dismiss plaintiff's *mandamus* count.

Defendants ask that we review whether: (1) the *mandamus* count in plaintiff's complaint stated a cause of action; (2) the doctrine of sovereign immunity barred the *mandamus* and injunctive relief sought; (3) the *mandamus* and injunctive relief granted was in error.

We affirm.

Plaintiff was hired as a DOC apprehensions specialist on December 17, 1984, after achieving a "well qualified" score on his examination. The job involved investigating fugitive warrants for escaped criminals or parole violators and locating and apprehending such fugitives.

Plaintiff served a six-month probationary period. After successful completion of probation, State employees achieve certified status. (80 Ill. Adm. Code 302.310 (1985).) No probationary employee may be discharged without approval of the Director of CMS, who may approve discharge of a probationary employee at any agency's request after considering the employee's performance records. (80 Ill. Adm. Code 302.320, 302, 780 (1985).) State agencies are required to prepare two evaluations of six-month probationary employees: one at the end of the third month and the other 15 days prior to the period's ending. 80 Ill. Adm. Code 302.270 (1985).

On his first evaluation, plaintiff was rated positively: he met five of the "assigned" objectives and exceeded one. In the "general appraisal" categories, he exceeded expectations in two and met expectations in the remaining six categories. He was not shown as needing improvement or failing to meet objectives in any category. In the "remarks" section of his evaluation, plaintiff's supervisor noted his "very professional manner," "excellent" performance, and that his value to his unit was "demonstrated by his initiative and resourcefulness in all assignments."

In early 1985, plaintiff decided to run for State representative in the next election. He claimed he was warned it would be a mistake and could cost him his job. In March 1985, he and another trainee arrived at a parking lot in Springfield, pulled behind a vehicle with a man standing in back of it and asked the man, who turned out to be Michael Lane, DOC Director, if he was in the apprehension unit. Lane considered that the two trainees he observed in the parking lot behaved in a disruptive and unprofessional manner, informed his deputy director, Douglas Brown, and asked him to investigate. Lane later learned plaintiff was involved, but asserted he did not instruct Brown to fire him.

Plaintiff received no disciplinary warnings or suspensions; instead, several letters of commendation were received for his work. On June 10, 1985, he learned that he and his partner, veteran apprehensions specialist Carl Flagg, ranked second among the 20 to 22 teams in northern Illinois.

Harold Thomas, Superintendent of the DOC Area 1 Community

Services Division, prepared favorable evaluations of approximately 27 probationary employees for the six-month period ending in June 1985, including plaintiff. Thereafter, Thomas' superior, Brown, by telephone, ordered Thomas, without reason, to change plaintiff's evaluation so as to prevent his certification. Thomas refused. Thomas never before had been asked to change an evaluation of a probationary employee. If "Springfield" disagreed with him, they had to so indicate in writing.

Thomas' secretary, Laura Lenkowski, had a telephone conversation with "someone" in Springfield, who dictated new wording for the supervisor's remarks section of the evaluation form. She could not recall any other certification recommendation that had been overruled, but had been instructed, on occasion, to change some category evaluations when employees came up for raises, usually to improve them so that an increase could be granted.

A negative evaluation for plaintiff's work in the period from March 16 to June 15, 1985, apparently bore Thomas' signature; however, Thomas testified that he may have signed the evaluation forms in blank, with the materials to be filled in later, including comments made by the individual employee, which the employee then signed. In this case, the block indicating that the document had been discussed with the employee was not checked and plaintiff's signature was not present.

The new wording dictated to Lenkowski showed that plaintiff failed to meet "assigned" objectives for six categories and succeeded in only one. In the "general appraisal" portion, plaintiff needed improvement in all eight categories. In the "remarks" section, plaintiff was shown to lack initiative, failed to meet established objectives, conducted ineffective follow-up investigations and displayed an unprofessional demeanor by vocally expressing dissatisfaction at being temporarily assigned to the evening shift. His refusal to accept an extradition assignment allegedly bordered on insubordination. Thomas stated he wrote none of these comments nor graded plaintiff in the categories as the form did. Thomas never received notice of any written disciplinary action against plaintiff. Thomas disagreed with the revised evaluation and believed plaintiff's discharge unwarranted by his record. Shortly thereafter, Thomas, himself, was relieved of his duties.

According to Robert Tapscott, manager of the Bureau of Personnel in CMS, the supervisor usually discussed evaluations with the employee concerned and both signed them before the forms were forwarded for further review. This afforded the employee an opportunity

to comment and explain any disagreement with his supervisor's recommendations and was one reason for the two-week time period for advance preparation of appraisal forms. An employee could be discharged even though he met his goals, for example, if there was some critical incident. A higher superior might have access to some information on misconduct that an immediate supervisor lacked. Tapscott believed employees had frequently received evaluations less than 15 days before the end of the probationary period and considered the critical date the day that period ended.

Tapscott characterized plaintiff's June 1985 evaluation as incomplete and not filled out in accord with personnel rules. A form lacking an employee's signature would be a "red flag" to CMS, requiring an investigation to determine the reason for the lack of an employee signature. CMS usually relied on contacting the agency, not the employee, to resolve such problems. Plaintiff's evaluation bore the appearance of having been done by Thomas. Tapscott thought one of his employees learned from DOC that a meeting was held with plaintiff prior to his discharge, but he had no firsthand knowledge of this. If no satisfactory explanation had been received for the missing signature, plaintiff probably would have been certified. CMS has no certified employees without agency recommendations.

Plaintiff's dismissal notice, mailed June 14, 1985, and containing an effective discharge date of June 15, 1985, referred to his unsatisfactory job performance, failure to meet objectives and his unprofessional conduct and demeanor. Nevertheless, on June 21, 1985, plaintiff was mailed a notice that he became a certified employee on June 17, 1985. The information concerning his discharge may not have been put into the State computer before the notice of certification was sent out. Plaintiff actually had worked on June 15 and 16, 1985. On June 17, 1985, he received and signed for his evaluation and notice of discharge.

On June 18, 1985, plaintiff requested an immediate discharge hearing by the Illinois Civil Service Commission (CSC). He also filed a verified complaint for injunctive relief against DOC and CMS and filed a Federal suit for damages. Plaintiff asked for a formal CSC hearing, alleging that administrative rules and his union contract were violated because he had not received his second evaluation 15 days before the end of his probationary period. Under the union contract, employers must prepare two written evaluations of probationary employees; the latter evaluation two weeks prior to probation ending. Evaluations are to be discussed with the employees.

A civil service hearing was held on August 7, 1985, focusing on

whether plaintiff was a probationary employee or a certified employee at the time of his dismissal. Plaintiff argued that his certification was effective June 17, 1985, the same date he received notice of his termination and such notice should be effective on receipt. The hearing officer concluded that plaintiff's discharge was effective when the papers were approved and the termination notice mailed. On August 21, 1985, CSC adopted the hearing officer's report and dismissed plaintiff's charges for lack of jurisdiction and on the ground that he had been a probationary employee when dismissed. CMS refused plaintiff a hearing for similar reasons.

After previous pleadings had been filed in the circuit court and dismissed, plaintiff filed his second amended verified complaint in four counts on October 6, 1986, against defendants DOC, McClure, CMS and CSC. Count I requested administrative review of CSC's action. Count II asked for reinstatement, back pay and injunctive relief against McClure for failure to follow personnel rules, failure to consider plaintiff's performance record, and the agency's failure to prepare the second evaluation 15 days prior to the end of the probationary period. Count III asserted that plaintiff's discharge was politically motivated and requested similar relief, as well as damages and attorney fees. Count IV asked for *mandamus* relief, seeking reinstatement and back pay to remedy McClure's violation of personnel rules and the union contract.

Defendant McClure subsequently was requested to admit that: plaintiff's second evaluation was prepared June 12, 1985; personnel Rule 302.260 (Ill. Adm. Code 302.260 (1985)) required that a second evaluation be completed 15 days before the end of his probationary period; plaintiff had no opportunity to comment on the evaluation on or prior to June 12, 1985; the second evaluation was not discussed with him nor did he sign it; and McClure did not review that evaluation before making the decision to fire him. No response to this request is contained in the record.

After a bench trial, the circuit court entered an order on November 6, 1987, adding Tristano as defendant, as current CMS Director, and finding for plaintiff on counts II and IV and for defendants on count III. The court ordered a *mandamus* and a mandatory injunction commanding plaintiff's certification as an apprehension specialist, restoration to his position and to all benefits as if he had worked continuously since discharge, including full back pay, and restraining Tristano and McClure from enforcing the order of discharge against plaintiff. Plaintiff additionally was awarded costs. The circuit court explained that its decision was based on defendants' failure to follow the proce-

dures in the administrative rules, not on the union contract, and that the rules' purpose was to ensure fair decision making by allowing employees to rebut unfair evaluations. The circuit court also voiced the suspicion that the parking lot incident influenced the agency decision. Defendants appeal.

I

Defendants first assert the *mandamus* count fails to state a cause of action and should have been dismissed by the circuit court because there is no clear allegation that McClure violated rules, plaintiff has not shown an undoubted right to the relief he requests and approval of discharge is a discretionary act unsuitable for *mandamus*.

■ *Mandamus* constitutes extraordinary relief awarded as an exercise in judicial discretion. (*Walter v. Board of Education* (1982), 93 Ill. 2d 101, 105, 442 N.E.2d 870.) *Mandamus* applies when there is a clear right to requested relief, a clear duty of respondent to act and clear authority to comply with the terms of the order. (*League of Women Voters v. County of Peoria* (1987), 121 Ill. 2d 236, 243, 520 N.E.2d 626; see *Coughlin v. Chicago Park District* (1936), 364 Ill. 90, 108-09, 4 N.E.2d 1; *People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 802, 340 N.E.2d 662.) *Mandamus* does not lie for a breach of contract claim alone, but is appropriate, as here, when reinstatement with back pay is sought. (*Walter v. Board of Education*, 93 Ill. 2d at 107.) In disciplinary proceedings, public agencies must follow their own rules; disciplined employees have the right to rely upon them. *Bell v. Civil Service Comm'n* (1987), 161 Ill. App. 3d 644, 651, 515 N.E.2d 248; *Brown v. Civil Service Comm'n* (1985), 133 Ill. App. 3d 35, 40-41, 478 N.E.2d 541, *appeal denied* (1985), 108 Ill. 2d 557; *Keefer v. Trizna* (1978), 64 Ill. App. 3d 844, 846, 381 N.E.2d 1049.

■ In the case *sub judice,* plaintiff sought *mandamus* because the CMS Director allegedly failed to follow applicable administrative rules which required that he consider employee performance records, including evaluations on appropriate CMS forms. Plaintiff possessed both a clear right and a vested interest in applicability of these rules which specifically were intended for probationary employees. McClure had a clear duty and the power to act to insure that the rules applied to all probationary employees, including plaintiff. In similar circumstances, *mandamus* has been used to reinstate a probationary policeman fired in violation of a statute and a municipal ordinance. *People ex rel. Charles v. Telford* (1977), 48 Ill. App. 3d 928, 929-32, 363 N.E.2d 612.

Cases defendants rely upon are distinguishable. In *Brunke v.*

*Board of Fire & Police Commissioners* (1981), 99 Ill. App. 3d 25, 27-28, 425 N.E.2d 15, plaintiff asserted a vested right to a promotion based on an erroneous interpretation of a statute. In *People ex rel. Donnelly v. McHenry County Sheriff's Department Merit Comm'n* (1980), 83 Ill. App. 3d 957, 958-60, 404 N.E.2d 1033, the applicable rule dealt with "consent," unlike the case at bar, in which the CMS Director had the authority to approve all discharges of probationary employees. (80 Ill. Adm. Code 302.320 (1985).) Further, in *Donnelly* the circuit court did not dismiss the *mandamus* petition, but granted a directed verdict after a hearing. In *Klupt v. Blue Island Fire Department* (N.D. Ill. 1980), 489 F. Supp. 195, 199-200, mere allegations, without proof, of failure to investigate and an uninformed consent to a discharge were found insufficient to establish the peremptory duty required for *mandamus*.

Here, plaintiff's allegations are specific and his right to the procedural protections claimed are clear from the evidence. The circuit court did not err in denying defendant's motion to dismiss the *mandamus* count.

## II

Defendants next maintain that both the *mandamus* and injunctive claims are barred by sovereign immunity, as they are really suits against the State and jurisdiction is limited to the Court of Claims.

■ Sovereign immunity has been abolished in Illinois, except as provided by law. (Ill. Const. 1970, art. XIII, §4.) The State may not be made a party or defendant in any court, however, except as provided by the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*) or the Court of Claims Act (Ill. Rev. Stat. 1985, ch. 37, par. 439 *et seq.*). (Ill. Rev. Stat. 1985, ch. 127, par. 801.) The Court of Claims has exclusive jurisdiction over all contract claims against the State and claims founded on administrative agency regulations. Ill. Rev. Stat. 1985, ch. 37, pars. 439.8(a), (b).

Whether the State is a party depends upon the issues involved and relief sought, not on the formal identification of the parties. (*Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 408, 475 N.E.2d 863; *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 186, 470 N.E.2d 1029.) When the State is directly and adversely affected by the judgment or decree, the suit is against the State. (*Hudgens v. Dean* (1979), 75 Ill. 2d 353, 357, 388 N.E.2d 1242.) Applying the presumption that the State or one of its departments cannot violate the State's constitution or laws, however, any such violation is deemed made by the head of the department involved and a lawsuit against

that officer is not an action against the State. *Sass v. Kramer* (1978), 72 Ill. 2d 485, 492, 381 N.E.2d 975; *Herget National Bank v. Kenney,* 105 Ill. 2d at 411.

■ The administrative rules that plaintiff contends were violated here had the force and effect of law. (*Bell v. Civil Service Comm'n,* 161 Ill. App. 3d at 651; *Brown v. Civil Service Comm'n,* 133 Ill. App. 3d at 40.) Violations of such rules are illegal and the shield of sovereign immunity does not protect such actions. A *mandamus* action to direct an official to perform an official duty properly can be brought in circuit court. *Senn Park Nursing Center v. Miller,* 104 Ill. 2d at 189.

Cases defendants rely upon are inapposite. They involve charges of exceeding authority, rather than violations of law (*Hudgens v. Dean,* 75 Ill. 2d at 356-57); an absence of factual allegations of illegal acts (*Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 108, 396 N.E.2d 1150); and allegations in which the principal relief sought was a monetary judgment to which equitable relief would have been incidental. *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 267, 470 N.E.2d 615.

The relief granted here against defendants by the circuit court was authorized by law.

### III

■ Finally, defendants insist that plaintiff was not entitled to relief because the rules involved only provided a directory, not a mandatory, deadline for turning in evaluations and only the union contract, not the rules, involved an employee's right to comment. Our reading of the rules is to the contrary.

In deciding whether to approve a discharge of a probationary employee, the rules require that the "Director [of CMS] *shall* consider the employee's performance records." (Emphasis added.) (80 Ill. Adm. Code 302.780 (1985).) The rules provide further that "[p]erformance records *shall* include an evaluation of employee performance prepared by each agency on forms prescribed by the Director." (Emphasis added.) (80 Ill. Adm. Code 302.270(a) (1985).) As Tapscott's testimony indicated, CMS carefully reviewed these forms, checking for the employee's signature and the supervisor's filling out the block indicating that the evaluation had been discussed with the employee. Although the word "shall" can be construed as directory, when a time period is provided to safeguard individual rights, it is deemed mandatory. *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332; *Grove School v. Department of Public Health* (1987), 160 Ill. App. 3d

937, 941, 513 N.E.2d 973.

The performance of an official duty is mandatory when disregard of such provisions would injuriously affect either public interests or private rights. (*Carrigan v. Illinois Liquor Control Comm'n* (1960), 19 Ill. 2d 230, 233, 166 N.E.2d 574.) Here, not only were plaintiff's rights disregarded, but the public interest in having probationary employees fairly evaluated would be injured. Assuming, *arguendo,* that the primary purpose of the evaluation forms and of giving probationary employees the opportunity to discuss them with their supervisors and make comments is to aid the CMS Director and the agency in making informed decisions whether to discharge such employees, or not (see *Alberty v. Daniel* (1974), 25 Ill. App. 3d 291, 298, 323 N.E.2d 110), even that goal was frustrated in the instant case. Plaintiff never had an opportunity to add his comments or to establish that Thomas neither made nor agreed with the comments that appeared. CMS received no information concerning Thomas' position; instead it appeared from the evaluation form that Thomas authored the comments and graded the categories. Thomas' testimony essentially ran counter to the category entries and the comments. As the circuit court observed, no factual basis for those evaluation form remarks is apparent from the record. The normal procedures CMS relied upon in this case were circumvented. One of the purposes of the 15-day period for preparation of the second evaluation, to allow time for review of the evaluation with the employee, was thwarted. When CMS did investigate, it was misinformed that a meeting with plaintiff had occurred and he had had a chance to discuss the evaluation. According to the evidence, CMS would not have terminated plaintiff if it knew he lacked that opportunity; instead, according to Tapscott, his certification probably would have been approved if his probationary period ended without such an opportunity.

Dismissals cannot be upheld when probationary employees are discharged without opportunities afforded them by agency rules to be heard and to defend. (*Sye v. Wood Dale Fire Protection District No. 1* (1976), 43 Ill. App. 3d 48, 50-51, 356 N.E.2d 938.) In the case *sub judice,* plaintiff clearly was denied the opportunity administrative procedures gave him to question in writing his adverse evaluation. The mere fact that plaintiff was a probationary employee gave defendants no authority to act outside of their own rules. *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 556, 495 N.E.2d 1228.

■ Injunctive relief is appropriate where a lawful right is certain and clearly ascertainable and when irreparable harm and an inadequate remedy at law are established. (*Distaola v. Department of Reg-*

*istration and Education* (1979), 72 Ill. App. 3d 977, 980, 391 N.E.2d 489.) Plaintiff's right to have administrative rules followed is certain and clearly ascertainable; his remedy at law is inadequate to furnish the benefits of reinstatement to his job. His prospects for advancement are harmed by the delay in reinstatement.

Granting plaintiff certified status, thereby assuring him the safeguard of a hearing in any future termination action, was appropriate to remedy violation of plaintiff's past procedural protections. The concomitant restoration of benefits and back pay also was proper.

In consideration of the foregoing, we find no error in the decision of the circuit court and, accordingly, affirm.

Affirmed.

BILANDIC and SCARIANO, JJ., concur.