THE PEOPLE *ex rel.* WILLIAM J. ULRICH, SR., Plaintiff-Appellant, v. BRUCE BOSMANN *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—95—0053

Opinion filed March 26, 1996.—Rehearing denied April 26, 1996.

Mark S. Simon, of Chicago (Jack Joseph, of counsel), for appellant.

Burditt & Radzius, Chartered, of Chicago (Norman P. Jeddeloh and Judith R. Amsel, of counsel), for appellees Yusoff Dawood and Firyal S. Khan-Dawood.

Keck, Mahin & Cate, of Chicago (Carla J. Rozycki and Catherine R. Giella, of counsel), for other appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Dr. Yusoff Dawood and his wife, Dr. Firyal S. Khan-Dawood, formerly faculty members of the University of Illinois College of Medicine (the University) until approximately December 31, 1989, accepted appointments at the University of Texas Medical School effective January 1, 1990. While at the University, they allowed funds from research grants and contracts, which were available for discretionary use by the University, to accumulate in University accounts under their supervision. University policy and State law prohibited the transfer of these funds to the University of Texas.

Prior to leaving the University, and as late as October and November 1989, the Dawoods purchased scientific and other equipment and paid for them from these funds. On December 21, 1989, the Dawoods requested approval in writing from Dr. Antonio Scommegna, head of the department of obstetrics and gynecology, to take this and other research equipment with them to the University of Texas in order to continue their research.

Dr. Bruce Bosmann, senior associate dean of the College of Medicine, approved the Dawoods' removal request, and Dr. Scommegna, Dr. Gerald Moss, dean of the College of Medicine, and Dr. Karen Hitchcock, vice-chancellor of research, concurred in his approval; accordingly, Dr. Dawood removed the property for his own use at the University of Texas. Internal auditors at the University subsequently determined that the equipment was removed without proper authorization.

On September 29, 1992, the University filed suit against Dr. Dawood, seeking to recover (1) $113,220, representing payments owed to the University for work that Dr. Dawood had performed as a "principal investigator" while in its employ, and for which Dr. Dawood had requested and received from the companies direct payment to him at the University of Texas; (2) $174,705, representing the cost of equipment belonging to the University which was removed by Dr.

Dawood to the University of Texas in violation of the State Property Control Act (30 ILCS 605/1 *et seq.* (West 1992), and (3) punitive damages and costs.

On December 8, 1993, a "Settlement Agreement and Release" was entered into by the University and Dr. Dawood which purported to release him from all claims against him in return for his assignment to the University of grant funds of $113,220. The University also expressly released the Dawoods from all of its claims and rights related to the transferred personal property. On June 9, 1994, the University's suit against the Dawoods was dismissed with prejudice.

On February 3, 1994, plaintiff notified the Illinois Attorney General of his intention to file this suit. The Attorney General neither responded to this notice, nor instituted his own action. Plaintiff's first amended complaint (complaint), filed on September 12, 1994, was brought against Stanley Ikenberry, president of the University, Doctors Bosmann, Scommegna, Moss, Hitchcock (collectively University administrators), and the Dawoods under the "Recovery of Fraudulently Obtained Public Funds Act" (the Recovery Act) (see sections 20—101 through 20—105 of the Code of Civil Procedure (735 ILCS 5/20—101 *et seq.* (West 1992))). Plaintiff's position throughout these proceedings has been that the University was joined solely because it had a custodial interest in the property alleged to have been wrongfully obtained by the Dawoods. (The University and its administrators are collectively referred to as the "University defendants.")

Plaintiff's complaint against Dr. Bosmann and the Dawoods alleged that: accumulated funds under the control of the Dawoods belonged to the University of Illinois and by law were to remain the property of the University; the Dawoods were not entitled to take these funds with them to the University of Texas, and "as part of a fraudulent scheme or device, in anticipation of their leaving the University of Illinois for a faculty appointment at the University of Texas, and in order to evade state law and University policy, in October and November of 1989, Dawood and Khan-Dawood spent more than $44,000 for the purchase of scientific and other equipment using University funds; these purchases were made for the express purpose of removing the purchased equipment to the University of Texas for the use there by Dawood and Khan-Dawood"; in December 1989, the Dawoods submitted a request to remove the equipment recently purchased and other equipment (removal request). This request enumerated 58 specific items of equipment and was attached to plaintiff's complaint as an exhibit.

Plaintiff further alleged that Dr. Bosmann approved the Dawoods' removal request knowing, among other things, that: all the property

in the Dawoods' removal request was owned by the State of Illinois; the removal request included equipment purchased within two months of the Dawoods' scheduled departure and included new equipment still in its original packaging; the University would receive no consideration for the equipment sought to be removed to Texas; and the request was not allowable under University policy or state law. Plaintiff further alleged that Dr. Bosmann informed Dr. Moss, Dr. Hitchcock, and Dr. Scommegna of all of these facts, and each of them "knowingly aided [the Dawoods] to remove property belonging to the State of Illinois, which was in violation of University policy and State law, and in furtherance of a fraudulent scheme or device." President Ikenberry is alleged to have delegated his responsibilities to the other administrators and is "deemed" to have also knowingly aided the improper removal of state property. Plaintiff sought damages from each of the University administrators and the Dawoods in excess of $100,000, payable to the State of Illinois.

In August 1994, all defendants moved to dismiss plaintiff's complaint. On December 13, 1994, in granting all of the defendants' motions to dismiss plaintiff's actions against them, the trial judge stated:

"With regard to the Board of Trustees of the University of Illinois the Court finds that claims against the university are claims against the state for purposes of sovereign immunity. As such, plaintiff's claims as to the University are claims against the State of Illinois, and under Illinois law the Court of Claims has exclusive jurisdiction to hear and determine all claims against the State of Illinois. Consequently the Court of Claims and not this court has jurisdiction over the claims against the Board of Trustees of the University of Illinois.

With regard to Bosmann, Moss, Scommegna and Hitchcock, the plaintiff alleges that they acted in dereliction of their duties in their position with the university by approving defendant Dawood's request to remove property. With regard to Ikenberry, the plaintiff alleges liability based vicariously on his position as the president of the university.

As agents of the university acting within the scope of their official authority defendants are acting as the state. As a result they are cloaked in the same immunity as the Board of Trustees, therefore, the action against these defendants must also be brought in the Court of Claims.

In addition, defendants are entitled to dismissal because the University of Illinois has already instituted an action for recovery of the property at issue and settled that case. Under the Act a private citizen's authority to bring action to recover damages is conditioned upon the actions of the state or local governmental unit.

The first sentence of Section 5/20—104(a) provides, 'Before any action is instituted pursuant to this act the state or local governmental unit shall make a good faith attempt to collect amounts owed to it by using informal procedures and methods.'

Section 5/20—104(b) then provides that private citizens may being [*sic*] an action if, 'The appropriate governmental official has not instituted an action for recovery or arranged for a settlement with the party alleged to have illegally obtained compensation.' Here the university not only instituted an action, it settled the case thereby precluding a private cause of action for the same recovery.

With regard to defendant Dawood the university has and had at the time it initiated and settled the suit with Dawood, the right and authority to recover the property at issue. Moreover is [*sic*] has a duty to resolve disputes involving property within its control. Accordingly the court refuses to set aside a settlement negotiated by the proper governmental entity under the act and allow a private citizen to substitute his will on the ground that he is unsatisfied with the outcome. Therefore, the court grants the motions to dismiss as to all defendants."

The trial court also went on to deny plaintiff's motion to file a second amended complaint which sought to add counts requesting a declaratory judgment that a regulation, first raised by defendants in their reply to plaintiff's answer to their motion to dismiss, was either invalid or inapplicable. Plaintiff appeals the trial court's dismissal of his actions and its denial of his motion to file a second amended complaint.

■ We first address the trial court's dismissal of plaintiff's actions against the University on the ground that the Court of Claims had exclusive jurisdiction over plaintiff's claims against the State.

Plaintiff contends that because his prevailing in his suit would result in judgment in favor of the State of Illinois (735 ILCS 5/20—103 (West 1992)), and because of the nine legislative grants of jurisdiction to the Court of Claims, eight are for claims against the State, and the ninth (recoupment against a claimant who has filed a claim) is inapplicable (705 ILCS 505/8 (West 1992)), his case does not fall within any of them; therefore, jurisdiction of this case was proper in the circuit court, citing *Farmer v. McClure*, 172 Ill. App. 3d 246, 253-54, 526 N.E.2d 486, 492 (1988).

In *Farmer*, this court stated: "Whether the State is a party depends upon the issues involved and relief sought, not on the formal identification of the parties. [Citations.] When the State is directly and adversely affected by the judgment or decree, the suit is against the State. [Citations.] Applying the presumption that the State or one

of its departments cannot violate the State's constitution or laws, however, any such violation is deemed made by the head of the department involved and a lawsuit against that officer is not an action against the State. [Citations.]" *Farmer*, 172 Ill. App. 3d at 253-54, 526 N.E.2d at 492. Accordingly, plaintiff maintains, "because the amended complaint raises no issue of liability against the University, nor seeks any relief against it, plaintiff's mere inclusion of the University as a nominal party is not a cause to divest the Circuit Court of its jurisdiction."

The University defendants, in arguing that "claims against the University are claims against the State of Illinois," cite *Tanner v. Board of Trustees of the University of Illinois*, 48 Ill. App. 3d 680, 683-84, 363 N.E.2d 208, 210 (1977), *Ellis v. Board of Governors of State Colleges & Universities*, 102 Ill. 2d 387, 394, 466 N.E.2d 202, 206 (1984), and *Rembis v. Board of Trustees of the University of Illinois*, 249 Ill. App. 3d 1, 618 N.E.2d 797 (1993), *appeal denied*, 153 Ill. 2d 569, 624 N.E.2d 816 (1993), all of which are cases in which damages were sought against universities of the state, including especially the University of Illinois. These authorities, therefore, do not overcome plaintiff's argument that, where damages are not sought against the State or the University, and where the University is named as only a nominal party, the action is not *against* the State.

Consequently, plaintiff's action *on behalf of* the State of Illinois, listing the board of trustees of the University only as a nominal defendant against whom no relief is sought, is not barred by the doctrine of sovereign immunity; thus, jurisdiction over plaintiff's claim is proper in the circuit court.

The trial judge similarly dismissed plaintiff's action against the University administrators for want of jurisdiction, stating that, "as agents of the university acting within the scope of their official authority, defendants are acting as the State." Accordingly, he held that jurisdiction of plaintiff's claim against the University administrators as well was in the Court of Claims.

The University administrators accurately state that their acts as administrators, performed within the bounds of their official authority, even if performed negligently, are deemed acts of the State itself for which they may not be subject to suit in the circuit court. See *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 618 N.E.2d 694 (1993); *Robb v. Sutton*, 147 Ill. App. 3d 710, 498 N.E.2d 267 (1986). Therefore, the administrators argue, "the Court of Claims has exclusive jurisdiction over such claims, which challenge the University's performance of its state functions through its duly authorized officers and administrators."

■ However, a suit which alleges that agents of the State acted in violation of either statutes or the constitution or in excess of their authority may be brought in the circuit court. *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990); *Farmer*, 172 Ill. App. 3d at 253-54, 526 N.E.2d at 492. Plaintiff's allegations that Doctors Bosmann, Moss, Scommegna and Hitchcock each knowingly aided the removal of the property in violation of University policy and/or state law essentially charge that they acted outside the scope of their authority in approving the Dawood removal request.

Plaintiff's claim against President Ikenberry alleges that his liability is premised upon his delegation of his duties to the other administrators in this case and that he is therefore "deemed" to have knowingly aided the wrongful removal of state property. As we have previously noted, it was held in *Farmer* that violations of law are "deemed made by the head of the department involved and a lawsuit against that officer is not an action against the State. [Citations.]" *Farmer*, 172 Ill. App. 3d at 253-54, 526 N.E.2d at 492.

Consequently, plaintiff's action against the University administrators is not an action against the State; the circuit court, therefore, has jurisdiction over these defendants.

■ Defendants next claim that plaintiff has no standing to bring this action. A private citizen bringing suit to recover public property under the Recovery Act must send a letter "to the appropriate government official stating his intention to file suit for recovery." 735 ILCS 5/20—104(b) (West 1992). The "appropriate governmental official" is defined as follows: "(1) the Attorney General, where the government unit alleged damaged is the State; (2) the corporation counsel where the government unit alleged damaged is a municipality with a population of over 500,000; and (3) the chief executive officer of any other local government unit where that unit is alleged damaged." 735 ILCS 5/20—104(b) (West 1992).

Plaintiff, bringing suit on behalf of the State of Illinois, maintains that his letter sent to the Attorney General satisfied the presuit notice requirement. In addition to the clear language of the statute, he cites *People ex rel. Board of Trustees of University of Illinois v. Barrett*, 382 Ill. 321, 46 N.E.2d 951 (1943), stating "it would be the duty of the Attorney General to institute all appropriate proceedings against [the University] and its officers and trustees, to either prevent or redress any breach of the trust. He would do this as the representative of the State and not as the representative of the [University] or its trustees." *People ex rel. Board of Trustees of University of Illinois v. Barrett*, 382 Ill. 321, 347, 46 N.E.2d 951, 964 (1943). Plaintiff further states that although the University has also been "dam-

44

aged," his suit addresses only the damage suffered by the State of Illinois; accordingly, his notice to the Attorney General was proper. We find that since plaintiff's presuit notice to the Attorney General satisfied the statutory notice requirement, he had standing to bring this action.

■ The trial judge also found that plaintiff lacked standing under the Recovery Act because the University initiated suit against Dawood and settled that suit.

After a letter is sent to the "appropriate government official," the private citizen may bring an action if "the appropriate government official has not, within 60 days of the date of delivery on the citizen's return receipt, either instituted an action for recovery or sent notice to the citizen by certified mail, return receipt requested, that the official has arranged for a settlement with the party alleged to have illegally obtained the compensation or that the official intends to commence suit within 60 days of the date of the notice." 735 ILCS 5/20—104(b) (West 1992).

The Recovery Act also provides that: "Civil recoveries provided for in this Article shall be recoverable only: (1) in actions on behalf of the State, by the Attorney General; *** and (3) in actions on behalf of any other local governmental unit, by counsel designated by the local government unit ***." 735 ILCS 5/20—104(a) (West 1992).

The parties again dispute which government official's inaction is required in order to confer standing upon plaintiff. Plaintiff claims that once the Attorney General failed to act within 60 days of his presuit demand, he met all the requirements of the Recovery Act and had standing to represent the State. All defendants claim that the filing of the suit and the settlement thereof by the University deprive plaintiff of standing under the Act.

We agree with plaintiff that the statute is quite clear in conferring on the private citizen the right to bring the action if the Attorney General does not file suit or make arrangements to settle the claim within the required time. There are no exceptions in the law that would embrace the action taken by the University. Indeed, there are no exceptions at all; if the Attorney General does not act, the right to act belongs to the citizen.

Accordingly, the University's suit against Dr. Dawood, which concluded with a settlement that still permitted the Dawoods to retain ownership of state property without compensation, allegedly in violation of State Law, cannot operate to deprive plaintiff of standing to assert the state's rights in and to that property.

■ Plaintiff's claim against Dr. Dawood was also dismissed on the ground that it was barred by the University's settlement of its action

against him. Under the doctrine of *res judicata*, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 528, 337 N.E.2d 19, 21 (1975), *cert. denied*, 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668 (1976). In addition, the dismissal with prejudice of a complaint, pursuant to a settlement agreement, is a final judgment on the merits. *Keim v. Kalbfleisch*, 57 Ill. App. 3d 621, 624, 373 N.E.2d 565 (1978).

Plaintiff argues that "the State has a legal interest in the illegally removed property that is separate and apart from the University's interest" and that, therefore, "because the State was not included as a party to the University's suit or settlement, neither the suit nor the settlement affected the State's rights to the property."

Because the doctrine of *res judicata* bars only the parties involved and their privies (*Simcox v. Simcox*, 131 Ill. 2d 491, 497, 546 N.E.2d 609, 611 (1989)), an action brought by the University of Illinois against Dr. Dawood cannot bar plaintiff from bringing suit on behalf of the State against any of the defendants in this case.

Lastly, plaintiff argues that the trial judge abused his discretion in refusing to grant him leave to file a second amended complaint adding the Director of Central Management Services (CMS) as a defendant, and seeking a declaratory judgment regarding the validity and applicability of CMS Regulation 5010.1410.

The Illinois Code of Civil Procedure provides:

"Amendments. (a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2—616(a) (West 1992).

"The test to be applied in determining whether the trial court's discretion was properly exercised is whether allowance of the amendment furthers the ends of justice." *Trans World Airlines, Inc. v. Martin Automatic, Inc.*, 215 Ill. App. 3d 622, 628, 575 N.E.2d 592, 595 (1991) (affirming the denial of leave to amend where no valid reason was given for the six-year delay).

The decision whether to allow an amendment rests within the

sound discretion of the trial court, and the exercise of its discretion will not be disturbed on review absent an abuse. *Talas v. Youngstown Sheet & Tube Co.*, 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052, 1054-55 (1985). "Among the factors to be considered in deciding that discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it could cause prejudice or surprise to other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified." *Talas*, 134 Ill. App. 3d at 107 (affirming the denial of leave to amend where the proposed amendment did not cure any defects in the pleading; the court found prejudice would result from causing the relitigation of similar allegations previously dismissed; and the proposed amendment was submitted more than three years after the initial filing).

In this case, plaintiff sought to amend his complaint to resolve an issue regarding the validity and applicability of a regulation which defendants raised for the first time in their reply to plaintiff's answer to their motion to dismiss the first amended complaint. Defendants will not be prejudiced by the addition of the proposed new counts, especially since it is they who have raised the validity and the applicability of the regulation at issue; and whether or not plaintiff's new counts are added, the relevance of the regulation to this case will need to be addressed by the trial court. Moreover, plaintiff has obviously not unreasonably delayed requesting permission to amend his complaint, for his motion came promptly after defendants imported the issue requiring the amendment into the case. We conclude, therefore, that plaintiff must be permitted to file a second amended complaint.

For all of the foregoing reasons, the order of the trial court dismissing plaintiff's first amended complaint is reversed and this case is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

HARTMAN, P.J., and DiVITO, J., concur.