In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3461

SKS & ASSOCIATES, INC.,

*Plaintiff-Appellant,*

*v.*

THOMAS J. DART, SHERIFF OF
COOK COUNTY, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-CV-05424—**Milton I. Shadur**, *Judge.*

ARGUED FEBRUARY 11, 2010—DECIDED AUGUST 27, 2010

Before KANNE, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In *Younger v. Harris*, 401 U.S.
37 (1971), a federal court plaintiff sought a federal in-
junction to stop state court proceedings that he claimed
would violate his federal constitutional rights. The Su-
preme Court said no, the federal courts would abstain,
leaving the state courts to consider the federal constitu-
tional issues that would arise in their proceedings.

In this unusual case, by contrast, a federal court plaintiff seeks a federal injunction not to stop state court proceedings but to speed them up. The plaintiff alleges that delays in the state courts are violating its federal constitutional rights. Although the posture is reversed, we conclude, based on the same principles of equity, comity, and federalism that are the foundation of *Younger* abstention, that abstention is required in this case as well. We affirm the district court's dismissal of the case. To the extent that delays in state court processes adversely affect the plaintiff, it can and must seek remedies through the state courts themselves.

I. *Factual and Procedural Background*

On November 24, 2008, Chief Judge Kenneth Wright of the Cook County Circuit Court entered General Order 2008-04. He ordered Cook County Sheriff Thomas Dart not to carry out residential evictions: (a) during two and a half weeks in the winter holiday season, (b) whenever the outside temperature dropped below 15 degrees Fahrenheit, or (c) whenever the sheriff determined that "extreme weather conditions endanger[ed] the health and welfare of those to be evicted." The Circuit Court has issued similar orders in previous years.

Appellant SKS & Associates, Inc. owns and manages residential rental properties in Cook County. SKS has had to use the process of eviction from time to time to deal with tenants who fail to pay rent. SKS alleges that the general order has cost it money by delaying its ability to evict those tenants. In this action under 42 U.S.C.

§ 1983 against the chief judge and the sheriff, SKS alleges that the chief judge's general order violated its federal constitutional rights. SKS claims the order denied it equal protection of the laws, deprived it of property without due process of law, and amounted to an establishment of religion.

The district court dismissed the action on its own initiative, before the defendants had appeared. In a thoughtful opinion, the district court rejected the contention that the action's dismissal deprived SKS of any remedy and determined that SKS could instead pursue state court relief by seeking a writ of mandamus. SKS filed a motion for reconsideration; after conducting a hearing, the district court denied the motion. This appeal followed.[1]

II. *Analysis*

SKS has asked the federal courts to issue an order to compel the circuit court to process evictions more quickly. At a superficial level, this action appears to be within the scope of 42 U.S.C. § 1983: plaintiff claims that its federal constitutional rights are being violated by persons acting under color of state law, and it seeks

---

[1] The chief judge and sheriff never filed appearances or briefs in the district court and have not participated in this appeal.

declaratory relief.[2] Yet the relief plaintiff seeks here would run contrary to the basic principles of equity, comity, and federalism. We find it necessary for the federal courts to abstain from resolving this case and to leave the matter to the courts of Illinois. See *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983) ("[T]he [federal appellate] court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it.").

Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358-59 (1989),

---

[2] Judge Shadur pointed out that plaintiff's original complaint did not ask for injunctive relief and that plaintiff could not obtain injunctive relief against Judge Wright without showing that he had violated an earlier declaratory decree. See 42 U.S.C. § 1983, as amended by Pub. L. 104-317, § 309(c), 110 Stat. 3847, 3853 (amended to bar injunctions against judicial officers for judicial actions or omissions "unless a declaratory decree was violated or declaratory relief was unavailable"). Although SKS later told Judge Shadur that it wanted injunctive relief, it cannot get around the terms of section 1983 prohibiting such relief against the state court judge.

quoting *Wilcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909) (omission in original).

Under established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them. The Supreme Court has recognized four main categories of abstention named after the cases that gave rise to them: *Pullman*, *Burford*, *Younger*, and *Colorado River.* See *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); see also *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953, 955-57 (3d Cir. 1993) (summarizing each). While this case falls outside the scope of *Pullman*, *Burford*, and *Colorado River*, it implicates the principles of equity, comity, and federalism that are the foundation for *Younger* abstention.

The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings. *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (reversing denial of *Younger* abstention and ordering dismissal of federal case). This case resembles the typical *Younger* abstention scenario in that it involves a claim that seeks equitable relief against state proceedings on federal constitutional grounds. SKS has come to federal court with a constitutional claim for equitable relief that seeks to compel the state court

to manage pending state cases—petitions for residential eviction orders—in a particular way. While this case fits *Younger* to that extent, the established doctrine does not fit neatly here because SKS is a plaintiff in state court, not a defendant, and it seeks to protect its federal constitutional rights by having the federal courts speed up the state court proceedings, not stop them.[3]

The original core of *Younger* abstention—from *Younger* itself—requires federal courts to abstain when a criminal defendant seeks a federal injunction to block his state court prosecution on federal constitutional grounds. See 401 U.S. at 53-54. While the Supreme Court

---

[3] The First and Ninth Circuits have both rejected claims seeking a federal court order compelling state court systems to speed up their case adjudication. In *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 706-07 (9th Cir. 1992), the Ninth Circuit rejected a federal claim seeking to compel the California court system to add judgeships in order to decide cases more quickly. The Ninth Circuit found that no court has recognized "a right to judicial determination of a civil claim within a prescribed period of time" and noted that it is "very difficult for courts to determine how much delay [is] constitutionally acceptable in any given case." 979 F.2d at 706, 703. In *Ad Hoc Committee on Judicial Administration v. Commonwealth of Massachusetts*, 488 F.2d 1241 (1st Cir. 1973), the First Circuit rejected a similar claim as presenting a non-justiciable political question. The First Circuit noted: "Delay *per se* is not unconstitutional; it may become such only when an injured plaintiff, ready and eager for trial . . . [is] denied for too long his day in court." 488 F.2d at 1244.

has extended *Younger* to civil proceedings, beginning with *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603-604 (1975), it has done so only in limited circumstances. The civil brand of *Younger* extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government. See *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432-34 (1982) (attorney disciplinary proceedings); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (civil proceedings seeking return of welfare payments wrongfully received); *Juidice v. Vail*, 430 U.S. 327, 335-36 & n.12 (1977) (civil contempt proceedings); *Huffman*, 420 U.S. at 604 (state court action to close adult theater); *Majors v. Engelbrecht*, 149 F.3d 709, 712-13 (7th Cir. 1998) (nursing license suspension proceedings before state administrative board). *Younger* is still "appropriate only when there is [a state judicial or administrative] action against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007).

In the pending state eviction actions, SKS is not a target of any effort to enforce state law. It is not even a defendant. Therefore, *Younger* abstention as we currently understand it does not completely fit here. Yet the *Younger*

doctrine is instructive here because this case implicates the same principles of equity, comity, and federalism that provide the foundation for *Younger* to such an extent that the federal courts must abstain here.

The Supreme Court has explained that *Younger* abstention is rooted in the traditional principles of equity, comity, and federalism:

> [*Younger*'s] far-from-novel holding was based partly on traditional principles of equity, but rested primarily on the "even more vital consideration" of comity. As we explained, this includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

*New Orleans Public Service, Inc.*, 491 U.S. at 364, quoting *Younger*, 401 U.S. at 43-44 (internal citations omitted). "[T]he principles of equity, comity, and federalism . . . must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 243 (1972) (discussing *Younger* and companion cases). "Cooperation and comity, not competition and conflict, are essential to the federal design", and *Younger* abstention "reinforces our federal scheme." *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004), citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999). These same principles of

equity, comity, and federalism compel us to decline to resolve this claim.[4]

_____

[4] These principles of equity, comity, and federalism that we apply today have broad application. In the field of federal habeas corpus, for example, long before Congress codified the requirement for exhaustion of state remedies in 1948 in 28 U.S.C. § 2254, the Supreme Court imposed the requirement based on these principles of equity, comity, and federalism. See *Preiser v. Rodriguez*, 411 U.S. 475, 512-13 (claims could not "have been heard on habeas corpus at the time the present habeas corpus statute was enacted in 1867, or at the time the exhaustion doctrine was first announced in *Ex parte Royall*, 117 U.S. 241 (1886), or at the time the requirement was codified in 1948") (Brennan, J., dissenting); Lee Kovarsky, *AEDPA's Wrecks: Comity, Finality, and Federalism*, 82 Tul. L. Rev. 443, 452 (2007) ("Exhaustion was first formulated as a matter of discretion in *Ex parte Royall*, but it quickly hardened into a fairly inflexible rule. In 1948, Congress codified extant exhaustion doctrine."). In *Ex Parte Royall*, the Supreme Court first established the exhaustion of state remedies requirement in habeas cases based on the importance of federal deference when a state court has already engaged a matter. The requirement was necessary "in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the [C]onstitution." 117 U.S. at 251. This underlying consideration is not unique to habeas cases. In fact, the *Royall* Court founded its exhaustion requirement on two cases that both involved civil claims against

(continued...)

SKS is not a defendant in the pending state eviction actions, but it seeks to have a federal court tell state courts how to manage and when to decide a category of cases pending in the state courts. Federal adjudication of SKS's claims on their merits would reflect a lack of respect for the state's ability to resolve the cases properly before its courts. Adjudication here would thus run contrary to the "vital" considerations of comity and federalism, see *New Orleans Public Service, Inc.*, 491 U.S. at 364, and would be inconsistent with "the traditional reluctance of a federal court to meddle in state court proceedings," see *Pugach v. Dollinger*, 365 U.S. 458, 462 (1961).

In terms of the more general equitable principles upon which *Younger* abstention is based, SKS has failed to show

---

[4] (...continued)

property. The Court quoted *Covell v. Heyman*, 111 U.S. 176, 182 (1884), for the point that when "courts of co-ordinate jurisdic-tion" defer to one another to avoid conflicts, it "is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity." See *Royall*, 117 U.S. at 252; see also *Taylor v. Carryl*, 61 U.S. 583, 595 (1857) (also quoted in *Royall*: it is "the duty of this court to give preference to such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may co-operate as harmonious members of a judicial system coextensive with the United States").

that it has no adequate remedy at law. See *Younger*, 401 U.S. at 43-44. We understand that SKS believes the chief judge's general order is causing it harm in a number of pending cases. As a litigant who believes a state trial court has erred and caused it injury, SKS is not alone, of course, but that is not a sufficient basis for the federal courts to step in and tell the state courts how to manage their dockets.

SKS insists that there is no adequate state remedy here, but we are not convinced. "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (reversing lower courts' failure to apply *Younger* abstention where federal plaintiff had not tried to present its federal constitutional claims to state courts). That assumption from *Pennzoil* applies here. SKS's complaint identifies a number of pending cases in which SKS could have sought relief from the state courts, but the complaint reflects no such efforts. We see no "unambiguous authority" that would prevent SKS from presenting its federal claims in the state courts.[5]

---

[5] The Supreme Court has taken care to ensure that the doors to federal courts remain open when there are powerful reasons to believe that state courts will not protect federal constitutional rights. For example, in *Dombrowski v. Pfister*, 380 U.S. 479 (1965), African-American plaintiffs sued in federal

(continued...)

While the availability of just one state court remedy would be sufficient to require abstention here, SKS actually has three possible remedies available to it.

First, in any of its pending eviction cases, SKS may simply ask the court to issue an order requiring the sheriff to carry out the eviction within a certain amount of time, notwithstanding the general order. SKS contends that any such order "would be unenforceable" in light of the general order. This is plainly wrong. A state court system is capable of resolving any conflict or tension

---

[5] (...continued)

court to block state prosecutions in a state court system that were chilling protected First Amendment expression, and there was reason to question the good faith of the state. The *Dombrowski* plaintiffs alleged (with ample supporting evidence) that the Louisiana court system was complicit in the state prosecutor's efforts to "employ arrests, seizures, and threats of prosecution under color of [state] statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate [their] constitutional rights . . . ." *Dombrowski*, 380 U.S. at 482. The *Younger* Court cited *Dombrowski* as a compelling example of situations where federal courts must adjudicate claims challenging state court procedures that "will not assure adequate vindication of constitutional rights." *Younger*, 401 U.S. at 48-49, citing *Dombrowski*, 380 U.S. at 485-86. This case is much closer to *Younger* than to *Dombrowski* because, as discussed below, SKS has avenues available to raise its constitutional claims before the state courts and has presented no allegations that might put this case in the realm of *Dombrowski*.

between two orders by two judges. Here, the second order would simply limit the discretion given to the sheriff by the first one. A circuit court is not forever bound by its general order and may revoke it, amend it, and allow exceptions to it as it sees fit. See *In Interest of General Order of Oct. 11, 1990*, 628 N.E.2d 786 (Ill. App. 1993) (reversing denial of motion to vacate a Cook County Circuit Court general order). If a request for a specific order for prompt eviction were denied, the denial would be appealable via state appellate procedures.

As a second avenue for relief in the state courts, SKS might file a separate suit seeking to vacate the general order. If the circuit court (or a state appellate court) found that state or federal law precluded or voided the general order, it would have the power to vacate the order. Nothing in the record suggests that SKS might lack standing to bring such a suit, especially given the importance of landlord and tenant rights and SKS's allegations that it has suffered and continues to suffer substantial harm as a result of the general order. See *In Interest of General Order of Oct. 11, 1990*, 628 N.E.2d 786 (Ill. App. 1993) (granting motion to vacate in direct challenge to a Cook County Circuit Court general order on the grounds that it was an improper exercise of legislative power by the judiciary; no standing problem given the "requisite degree of public interest"); see also *In re General Order of March 15, 1993*, 629 N.E.2d 673 (Ill. App. 1994) (vacating general order that barred attorney from appearing before the issuing judge; attorney had

standing to appeal the general order directly as it applied specifically to her).[6]

As a third avenue for state court recourse, SKS may seek a writ of mandamus to compel the circuit court to rescind or vacate the general order and to compel the sheriff to timely fulfill his duty to execute orders of eviction. SKS contends that mandamus is not available because the chief judge's issuance of the general order and the sheriff's eviction executions are both discretionary acts. "[M]andamus is used only to compel a specific duty or act, but mandamus does not lie where the order would interfere with the exercise of a discretionary act." *DeVito v. Chicago Park District*, 972 F.2d 851, 858 (7th Cir. 1992). Illinois appellate courts have found that a circuit court does not have discretion to issue a general order in certain circumstances. See *In re General Order of March 15, 1993*, 629 N.E.2d at 678 (law permitting circuit court to issue disciplinary general order was unconstitutional); *In Interest of General Order*

---

[6] The Illinois circuit courts are also fully capable of resolving any federal constitutional arguments that SKS might make. As the Supreme Court pointed out in *Pennzoil*, Article VI of the United States Constitution requires all federal and state judges to swear to uphold the United States Constitution. 481 U.S. at 15; accord, *Allen v. McCurry*, 449 U.S. 90, 105 (1980) (state courts have the capacity and the obligation to render decisions on federal constitutional issues); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 341-44 (1816) (state courts have a constitutional obligation to uphold federal law).

*of Oct. 11, 1990*, 628 N.E.2d at 789-90 (in issuing general order, circuit court exceeded its authority under Illinois statutes and the Illinois Constitution). The Illinois courts can determine whether the issuance of the general order was a discretionary act in light of governing Illinois law. We see no unambiguous authority that would require an answer blocking this possible avenue of relief.[7]

The only authority that gives the sheriff the discretion to delay eviction based on his own subjective weather determinations is the general order itself: "the Sheriff shall cease execution of [eviction] orders . . . whenever regardless of outside temperature, extreme weather conditions endanger the health and welfare of those to be evicted." A writ of mandamus vacating the general order would eliminate this discretion, and thus any decision to delay eviction for subjective weather concerns would be the proper target of a writ of mandamus itself. See *Farmer v. McClure*, 526 N.E.2d 486, 490-91 (Ill. App. 1988) (granting mandamus; state official had a clear duty to act and no discretion to decline to act).

When a section 1983 suit seeks a federal order compelling a state court to do something in an ongoing action, it calls upon the federal courts to cause friction with principles of comity and federalism. The friction would be especially gratuitous in this case. We are

---

[7] See *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009) (a police officer's discretion is limited to the bounds of the Constitution; inherently discretionary acts lose their discretionary character when they impinge upon a constitutional right).

asked to dictate to a state court how it must handle its case adjudication, see *Christensen v. County of Boone*, 483 F.3d 454, 465 (7th Cir. 2007) ("each sovereign may apply its own procedural rules in its own courts"); 735 ILCS 5/1-104(b) ("Subject to the rules of the Supreme Court, the circuit and Appellate Courts may make rules regulating their dockets, calendars, and business."), and we are asked to do so by a complaining party that has failed to try the state court processes that can provide the relief it seeks. The "vital consideration" of the "proper respect for state [adjudicative] functions" would be subverted if we were to entertain these claims. See *Younger*, 401 U.S. at 44.

We recognize that there is no general duty to exhaust state judicial or administrative remedies before pursuing a section 1983 action. See *Felder v. Casey*, 487 U.S. 131, 146-47 (1988); *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 500-501 (1982) (collecting cases). However, when the section 1983 action seeks to impose federal supervision on state court proceedings, the federal courts must defer to the state's sovereignty over the management of its courts, at least so long as the state does not substantively limit or procedurally obstruct something that Congress intended to provide by enacting section 1983. See *Felder v. Casey*, 487 U.S. at 147 ("States retain the authority to prescribe the rules and procedures governing suits in their courts . . . . [H]owever, that authority does not extend so far as to permit States to place conditions on the vindication of a federal right."); cf. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)

(stating that in a takings case, "a property owner has not suffered a [Constitutional violation] until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation" and drawing an analogy to a denial of due process). Unlike the State of Wisconsin in *Felder*, Cook County has done nothing to limit the remedies available to claimants like SKS, nor has the county attempted to force SKS into a specialized, burdensome adjudication system. See *Felder*, 487 U.S. at 141-150 (striking state statute that limited remedies, provided specialized courts, and imposed a notice restriction). Illinois, like many states, has simply established that its circuit courts are the venues where landlords may obtain eviction orders. If a landlord has a pending action before the circuit court and wishes to obtain relief with regard to that action, it must petition that court and/or the state appellate courts for the relief.

This case calls for application of familiar principles to a novel type of lawsuit. SKS has not directed us to any comparable case in which federal courts, in the face of these principles of equity, comity, and federalism, have undertaken to supervise state court operations. SKS relies on the Sixth Circuit's decision in *Morrison v. Lipscomb*, 877 F.2d 463, 468 (6th Cir. 1989), in which the Sixth Circuit held that a Michigan landlord who objected to a state court's similar seasonal moratorium on residential evictions might be able to obtain relief by naming the state court clerk as a defendant. The focus of the *Morrison* opinion, however, was on doctrines of judicial immunity. The opinion did not raise or address

the issues under abstention principles that we believe are controlling here.

The claims here are not appropriate for resolution in federal court. SKS is free to pursue a remedy in state court. The judgment of the district court is AFFIRMED.