*In re* GENERAL ORDER OF MARCH 15, 1993 (The People of the State of Illinois, Petitioner-Appellee, v. Julie Hull, Respondent-Appellant).

First District (2nd Division)   No. 1—93—1348

Opinion filed February 1, 1994.

Rita A. Fry, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Elizabeth A. Scholz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

On March 15, 1993, respondent Julie Hull, an assistant Cook County public defender, was representing a juvenile at a probable cause hearing which was being held before Judge Arthur Rosenblum in Cook County circuit court. The juvenile, alleged to be delinquent, was charged with possession of a controlled substance, heroin, with intent to deliver. At the hearing, the State established through the arresting officer that while the juvenile was being pursued by the police, the officer saw him drop a cellophane bag. The officer later retrieved the bag and learned that it contained 120 foil-wrapped packets which, combined, proved to hold 36.5 grams of heroin.

During Hull's cross-examination of the arresting officer she attempted to show that he was mistaken in his belief that it was her client who had dropped the heroin. For example, she sought to have him admit that he was well behind the juvenile while chasing him. She emphasized that it was dark when the officer pursued the youth and that the street where he allegedly dropped the bag was litter-strewn, thus intimating that the heroin was discarded by someone other than her client. The court sustained some of the State's objections to this line of questioning and overruled others.

The State next objected when Hull asked the officer to describe the size of the cellophane bag, and after the court sustained the objection, the following exchange took place:

"Ms. Hull: May I have the basis your Honor? I am really—this is not a game. We don't know if, in fact—he says he was behind him. He didn't capture my client. It's dark out and the—.

THE COURT: Please. We don't have a jury here.

Ms. Hull: It's not for the jury.

THE COURT: I think it is.

Ms. Hull: It's called the right to confront, you know, the sixth amendment right.

THE COURT: Oh, the sixth amendment of the constitution itself?

Ms. Hull: Yeah, that's why we have these hearings.

THE COURT: The objection is sustained ***."

Despite the court's having sustained the State's objection to her line of questioning, Hull persistently attempted to explore the extent of the officer's ability to observe her client's activities during the

chase. The court reminded her on more than one occasion that the State had previously and meritoriously objected to exactly the same questions and it further advised her that the answers to her questions were the proper subject matter of discovery requests but were inappropriate for the purposes of a hearing limited to determining whether the officer had sufficient cause to arrest the juvenile offender.

At another point, she again demanded to know the basis of the court's sustaining the State's objection to a question she posed, and the court responded:

"The basis of it is your demeanor, your line of questioning. I don't know who you are trying to impress, but it's not me that you are impressing, and we have gone over this several times but you go ahead. If you want to enjoy yourself, you go ahead until you get to a point where I am going to hold you in contempt of court for following the same line of questioning and bar you from this courtroom."

Paying no regard to the court's admonishment, Hull continued to seek an admission from the officer regarding what he saw or did not see. When she explained to the court that her questioning bore on the witness' credibility, the judge once more reminded her that he was holding only a probable cause hearing at which it would not be proper to make credibility assessments. At the close of cross-examination, the judge entered a finding that there existed probable cause to arrest and also found, based on the juvenile's past record, that there were grounds to keep him in detention pending his delinquency adjudication.

Hull then asserted a demand for trial on behalf of her client and the court scheduled the case to be heard two weeks later. Not satisfied with this date, she again demanded a trial, apparently indicating that her client sought a trial later that same day. When asked, the State informed the court that it would not be ready to present its case that soon on such scant notice, adding that the juvenile had not yet filed an answer to the delinquency petition nor had he submitted to the State's discovery; therefore, it urged, he was not entitled to a hearing that day. The court then suggested that the two sides go to trial without the juvenile's answer being filed or discovery having been completed, but the State stood on formality and repeated that it was not prepared for trial.

Hull stated for the record that she was making her demand in order to begin the running of the 120-day period in compliance with the "speedy trial" provision of the Juvenile Court Act. (705 ILCS 405/5—14 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 37, par. 805—14).) The court instructed her to adhere to circuit court practice

by filing a written demand with the clerk's office. She asked the State to stipulate to her filing, to which the court responded that it was powerless to direct the State to stipulate to anything. The judge then announced:

"After today you are barred from appearing in my courtroom on any case. You can make any statements in the record. I find your demeanor, your courtroom demeanor, offensive and deliberately calculated to incur the anger of the Court and the patience of the Court. You are barred from coming into this court anymore."

Immediately thereafter, Hull apparently turned, and as a last act of defiance, ran to the back of the court, put on her coat and headed out the door. The judge ordered her to return to the well of the court, remove her coat and appear before it dressed properly. It then dismissed her. In the written order handed down by the court, the order from which she appeals, Hull was barred from appearing before Judge Rosenblum in the future "for all matters except those contested matters which were commenced prior to March 15, 1993[,] that she is the appointed attorney of record."

Hull's principal contention on appeal is that section 6 of "An Act to revise the law in relation to attorneys and counselors" (Act)[1] (705 ILCS 205/6 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 13, par. 6)), which Act empowers circuit court judges to suspend attorneys appearing before them for malconduct, constitutes an impermissible legislative encroachment on an exclusive prerogative of the supreme court, namely, the regulation of the legal profession. According to Hull, the Act is an archaic vestige of an older era when poor communications necessitated authorizing circuit court judges to suspend dishonest attorneys in order to protect the public from them until such time when the supreme court could conduct proper disciplinary proceedings. She argues that with the creation of the Attorney Registration and Disciplinary Commission (ARDC), this

---

[1]The Act provides:

"No person, whose name is not on such roll, with the day and year when the same was written thereon, shall be suffered or admitted to practice as an attorney or counselor at law in any court within this State, and the justices of the supreme court, in open court, shall have power at their discretion to strike the name of any attorney or counselor at law from the roll for malconduct in his office; and any judge of a Circuit Court shall, for like cause, have power to suspend any attorney or counselor at law from practice in the court over which he presides, during such time as he may deem proper, subject to the right of appeal as in other civil cases." 705 ILCS 205/6 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 13, par. 6).

interim disciplinary authority can no longer reside in the circuit judges, but is reserved to the ARDC, endowed, as it is, with adequate investigative and adjudicatory capabilities.

The State counters that an inquiry into the continuing constitutionality of the Act is not necessary here because the circuit court did not invoke or rely upon the Act when it sanctioned Hull. The State suggests that in order to suspend her, the judge simply exercised his inherent authority to control his courtroom and to ensure that attorneys appearing before him exhibit proper respect for the authority of the court. The State also urges this court to find that Hull lacks standing to contest the constitutionality of the Act because the circuit judge did not expressly indicate that he was relying on the Act as the source of his authority to suspend her. Thus, according to the State, she cannot allege that she is aggrieved by the unconstitutional enactment. See *People v. Rogers* (1989), 133 Ill. 2d 1, 549 N.E.2d 266; *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97; *People v. Hood* (1990), 203 Ill. App. 3d 289, 296, 560 N.E.2d 1187, 1192 ("A party may not challenge a statute's constitutional validity unless that party has sustained or is in immediate danger of sustaining a direct injury as a result of the statute's enforcement").

■ Both of the State's preliminary arguments are baseless. First, the trial court's inherent power to control its courtroom and maintain the proper decorum extends no further than its ability to find someone in contempt (see *In re G.B.* (1981), 88 Ill. 2d 36, 430 N.E.2d 1096; *In re F.B.* (1990), 206 Ill. App. 3d 140, 564 N.E.2d 173); however, there exists no authority for the proposition that the trial court may invoke its power to declare an attorney in contempt and, as a consequence thereof, disbar or suspend him or her from appearing before it. As the United States Supreme Court has noted: " 'The power to disbar an attorney proceeds upon very different grounds' from those which support a court's power to punish for contempt." *Cammer v. United States* (1956), 350 U.S. 399, 408 n.7, 100 L. Ed. 474, 479 n.7, 76 S. Ct. 456, 460 n.7, quoting *Ex Parte Robinson* (1873), 86 U.S. (19 Wall.) 505, 512, 22 L. Ed. 205, 208.

The unfounded nature of the State's position is also evident in those cases where our supreme court long ago addressed the extent of the authority conferred on a circuit court by the original version of the Act. In each case, the unexpressed yet underlying principle was that the ability to suspend an attorney resides innately in no court but the supreme court. Consequently, the circuit court's authority to suspend Hull was fully dependent upon and was no broader than that which was expressly granted to it by the Act.

In *Winkleman v. People* (1869), 50 Ill. 449, the presiding

judge of the St. Clair circuit court which, at that time, encompassed St. Clair and two other unnamed counties, permanently suspended an attorney from practicing in the courts of the entire circuit; the attorney had altered a court document so as to make an injunction extend to individuals who had not been before the court. On review, the supreme court vacated the suspension order as being overly broad, holding that the Act then in existence did not confer such broad authority on the circuit courts as to empower them to disbar *de facto* an attorney who was guilty of some misconduct. More important for the purpose of this case, it held: "We know of no power inherent in the circuit courts, to suspend from practice an attorney duly licensed by this court; at least none, so to suspend him, as, virtually, to strike him from the roll." *Winkleman*, 50 Ill. at 452.

Later in *Moutray v. People ex rel. Morris* (1896), 162 Ill. 194, 44 N.E. 496, the court held invalid an order of a circuit judge who prohibited two attorneys from appearing before any court in the Second Judicial District on a charge of forging court documents, effectively disbarring them in the courts of 14 counties. The supreme court held that the fullest extent of the Act was to enable the court to limit the practice of attorneys only in the court over which the suspending judge presides.

The most recent decision to consider the Act, which was handed down in 1938, also suggests that the circuit court, in the absence of the Act, is without the power to suspend an attorney generally, or even to prevent one from appearing in the court over which he presides. In that case, *Wayland v. City of Chicago* (1938), 369 Ill. 43, 15 N.E.2d 516, the court struck a local rule of the circuit court of Cook County which had created an executive commission of the court and charged it with the responsibility of suspending from practice in the circuit those attorneys who were deserving of such punishment. The court struck this rule on a variety of grounds, among which was that the Act, which the executive committee cited as the source of its authority, allowed a circuit judge to restrain the practice of attorneys only in the courtroom wherein he sat and nowhere else.

The conclusion that the ability of the circuit court to suspend an attorney is not an aspect of the court's inherent ability to control its courtroom finds its ultimate support in the *dicta* of two decisions of our supreme court where it imposed some type of discipline on an attorney. In those cases, the court stated in passing and without analysis that "[t]he privilege of appearing as an attorney in the courts of this State is granted by this court *and taken away only by this court or by statutory enactment.*" (Emphasis added.) (*In re Heirich* (1957), 10 Ill. 2d 357, 362-63, 140 N.E.2d 825, 829; *People ex rel. An-*

*drews v. Hassakis* (1955), 6 Ill. 2d 463, 468, 129 N.E.2d 9, 11, citing Ill. Rev. Stat. 1953, ch. 13, par. 6.) Accordingly, the State is clearly incorrect when it asserts that Judge Rosenblum derived his ability to suspend Hull from his inherent power to control his courtroom. It follows, therefore, that the State is also wrong in maintaining that Hull lacks standing to challenge the constitutionality of the Act. It is an unavoidable conclusion that she is aggrieved by the Act in view of the fact that it is the only potential source of the court's power to suspend her. Thus, we must reach the question of whether the Act constitutes an impermissible legislative encroachment on an area of judicial dominion which is beyond the control of the General Assembly.

■ The State argues that the Act is constitutional in that it is not contrary to the disciplinary rules of the supreme court, but actually supplements them. It also claims that the statute provides a strong and effective deterrent which goes far in ensuring that no attorney will display the type of disrespect shown by Hull in the case at bar.

At the outset of our analysis, we acknowledge that the constitutionality of the Act finds some implied support in *Winkleman*, *Moutray* and *Wayland* by the mere fact that in those cases the supreme court did not strike the Act outright, but only limited the scope of the authority it conveyed. However, we note and consider it significant that those cases are quite dated. Since they were handed down, our supreme court has promulgated a series of rules creating a comprehensive and pervasive regulatory scheme for the discipline of members of the Illinois bar. By this scheme, we conclude that our supreme court has elected to exercise plenary and exclusive control over attorney discipline and in so doing has rendered obsolete and without any force whatsoever, any legislative enactment, such as the Act, which furthered a similar interest.[2]

In contexts other than the one at bar, the appellate court has

---

[2]In *People v. Battershell* (1991), 210 Ill. App. 3d 883, 569 N.E.2d 308, the court determined that the Act would not arm a circuit court with the ability to force an attorney, who had pleaded guilty to tampering with public records, to agree not to practice law anywhere in the country as a condition of his probation. The court did not reach the question of the constitutionality of the Act because it determined, under the precedents discussed above, that the court's sanction went beyond even that authorized by the Act. The court did however express doubts about the Act's current vitality. The court stated: "It is *** somewhat questionable as to whether the supreme court would allow any interference at the present time of [*sic*] its right to regulate the practice of law, but we need not reach that issue in this opinion." *Battershell*, 210 Ill. App. 3d at 888, 569 N.E.2d at 312.

reached the conclusion that the creation of the ARDC signalled the intent of the supreme court to make attorney discipline its exclusive concern which is not susceptible to sharing, even if the enactment can be conceded to complement the supreme court's regulations. In *In re Marriage of Dall* (1991), 212 Ill. App. 3d 85, 569 N.E.2d 1131, for example, the court struck an order of a circuit court judge that censured an attorney appearing before him in an action seeking a dissolution of marriage. The attorney was sanctioned when, at a contempt hearing of his client, it was disclosed that the attorney had given his client faulty legal advice that bordered on malpractice. In its written order denying the client's post-trial motion, the court included a sentence rebuking the attorney. The appellate court held that this constituted a censure which, like other means of professional discipline, could be imposed only by the supreme court; it therefore vacated that part of the order.

Similarly in *People v. Camden* (1991), 210 Ill. App. 3d 921, 569 N.E.2d 312, the appellate court vacated an order of the trial court which fined the State's Attorney of Crawford County $1 for an alleged *ex parte* communication with a defendant's physicians. The appellate court determined that, in the absence of a finding of contempt as a necessary precursor to the fine, it constituted an unauthorized attempt at attorney discipline by the circuit court. The court held that that power resides only in the supreme court or in another body empowered by it to serve as its agent in that capacity. The reasoning of *Camden* and *Dall* adumbrates all other appellate decisions that have reviewed the sanctioning of an attorney which was not preceded by a finding of contempt and which was issued by a court other than the supreme court. *E.g.*, *City of Chicago v. Higginbottom* (1991), 219 Ill. App. 3d 602, 629, 579 N.E.2d 890 ("It is the law of this State that the sole authority to impose disciplinary sanctions on attorneys is with the supreme court, and the appropriate forum to investigate the conduct of an attorney and conduct hearings is the Attorney Registration and Disciplinary Commission[ ]"); *Freeman v. Myers* (1989), 191 Ill. App. 3d 223, 227, 547 N.E.2d 586, 589 ("These [various supreme court rules related to the regulation of the legal profession] provide for disciplinary measures to be taken by the [ARDC] and do not provide for the trial court to order its own independent sanctions"); *Reed Yates Farm, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 530, 526 N.E.2d 1115, 1122 (holding that the supreme court has the exclusive and plenary jurisdiction to punish attorney misconduct, and this task may not be undertaken by lower courts except when acting as its agent).

In *People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 519 N.E.2d

898, the supreme court, although not expressly overruling its earlier decision which had countenanced some shared authority over the legal profession with the legislature, appears to have approved, at least implicitly, the contrary logic advanced by the aforementioned appellate decisions in a case reviewing the striking of a circuit court local rule. The circuit court of Cook County had promulgated a rule pursuant to the authority vested in it by Supreme Court Rule 21(a) (107 Ill. 2d R. 21(a)), which compelled plaintiffs' attorneys in personal injury actions to attest to compliance with Supreme Court Rules 2—103 and 5—103 of the Code of Professional Responsibility. (107 Ill. 2d Rules 2—103, 5—103.) The appellate court, after determining that the supreme court had preempted all authority having to do with attorney discipline, struck the local rule even though it served to further the effectiveness of the supreme court's own disciplinary rules. *People ex rel. Brazen v. Finley* (1986), 146 Ill. App. 3d 750, 497 N.E.2d 1013.

The supreme court affirmed the appellate court. It held that it alone had the authority to regulate and to discipline attorneys in Illinois. The court identified the source of its power as being its exclusive authority to admit members to the bar in Illinois (see *In re Mitan* (1987), 119 Ill. 2d 229, 518 N.E.2d 1000; *In re Application of Day* (1899), 181 Ill. 73, 54 N.E. 646), and concluded that the power to admit carried with it the power to punish or to disbar and that, moreover, the power to admit being exclusive, the concomitant power to sanction must also be restricted to the body so empowered. The court deemed it irrelevant to its reasoning that the circuit court rule supplemented its own as opposed to being inconsistent therewith. Consequently, the court agreed that the rule must be invalidated as an impermissible intrusion on its indivisible authority.

Under the logic of *Brazen*, the enactment *sub judice* must be deemed an improper legislative interference with a plenary and exclusive aspect of the jurisdiction of the supreme court. Even as circumscribed by the earlier cases, the Act nevertheless regulates the practice of law in Illinois. It enables an authority other than the supreme court, in this case circuit court judges, to limit the ability of attorneys to practice their profession if the judges choose to avail themselves of the provisions of the Act. We assume the earlier decisions of the supreme court which tacitly approved the Act to have been impliedly overruled. That being the case, the Act must now be considered an unconstitutional encroachment on the court's exclusive

authority and therefore unenforceable. As a result, Judge Rosenblum was without the power to impair Hull's ability to practice before him. Accordingly, his general order of March 15, 1993, is vacated.

Vacated.

DiVITO, P.J., and HARTMAN, J., concur.