(No. 106678.—

EDWIN A. BURNETTE, Public Defender of Cook County, Petitioner, v. HONORABLE LAWRENCE TERRELL, Judge of the Circuit Court of Cook County, Respondent.

*Opinion filed March 19, 2009.*

524

Lester Finkle, Assistant Public Defender, of Chicago, for petitioner, and Edwin A. Burnette, Public Defender of Cook County, of Chicago, petitioner *pro se.*

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for respondent.

Robert F. Harris and Kass A. Plain, of the Office of

the Cook County Public Guardian, of Chicago, for *amicus curiae* Cook County Public Guardian.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Petitioner, Edwin A. Burnette, in his capacity as public defender of Cook County, filed this original action pursuant to Supreme Court Rule 381 (188 Ill. 2d R. 381), seeking either a writ of *mandamus* or a writ of prohibition against the Honorable Lawrence Terrell, Judge of the circuit court of Cook County. We allowed petitioner's motion for leave to file his petition. In addition, we allowed the Cook County public guardian to file a brief *amicus curiae* pursuant to Supreme Court Rule 345 (210 Ill. 2d R. 345).

While we find merit in petitioner's claim, we decline to employ either of the extraordinary remedies requested. Rather, we choose to resolve the controversy by exercising this court's supervisory authority in the form of a supervisory order.

## BACKGROUND

This controversy arises as a result of respondent's repeated removal of an individual assistant public defender (hereinafter identified as K.T.) from representing clients in his courtroom and his appointment of other assistant public defenders to represent those clients.

The record before us includes transcripts of several proceedings in respondent's courtroom and the affidavits of K.T., Parle Roe-Taylor, assistant public defender and acting chief of the Fourth Municipal District for the of-

fice of the Cook County public defender, respondent, and the Honorable Edmund Ponce de Leon, presiding judge of the circuit court of Cook County, Fourth Municipal District.

On May 8, 2008, K.T., who was then one of three public defenders assigned by the public defender's office to represent clients in respondent's courtroom, petitioned for substitution of judge in two cases. Both petitions were allowed by respondent.

That same day, Roe-Taylor was called to the office of the presiding judge, where she was informed that respondent wanted K.T. "removed from his courtroom" because he was having "problems" of an unspecified nature with her. Roe-Taylor informed the presiding judge that she was not aware of any problems and had received no information from respondent regarding K.T. She noted that K.T. had recently had a jury trial before respondent in which her client was acquitted.

Between that date and May 21, 2008, respondent recused himself from over 20 cases in which K.T. represented the defendants.

On May 21, 2008, defendant Brad Scianna appeared in respondent's courtroom and requested that the court appoint a public defender to represent him. The following exchange occurred:

> Respondent: "Where's the Public Defender?"
> K.T.: "Assistant Public Defender [K.T.]"
> Respondent: "All right. You can stand down."
> K.T.: "Your Honor, it is my week."
> Respondent: "All right now. I'm going to ask you again to stand down. You're either going to do it voluntarily or you are going to be put down."

Respondent then directed another assistant public defender, B.H., to speak with defendant Scianna.

The following day, May 22, 2008, K.T. appeared in the arraignment of defendant Kathy Neeld. Respondent again directed K.T. to "stand down," and directed B.H.

to speak to defendant Neeld. On this occasion, Roe-Taylor, the immediate supervisor of Assistant Public Defenders K.T. and B.H., was present. The following exchange occurred:

> Roe-Taylor: "Excuse me, your Honor."
>
> Respondent: "You have no standing. Standing down, ma'am."
>
> Roe-Taylor: "Attorney supervisor ..."
>
> Respondent: "Stand away from the bench."
>
> Bailiff: "Step away, Counsel."
>
> Respondent: "Refusal to do so will be contemptuous."

(K.T.'s motion to quash arrest and suppress evidence in Neeld's case was subsequently heard by a different judge. The motion was granted and the case was dismissed.)

Later that day, Roe-Taylor spoke to the presiding judge about respondent's "threat of contempt" against her. The presiding judge informed Roe-Taylor that he would speak to respondent about the matter. The presiding judge subsequently informed Roe-Taylor that respondent would recuse himself if he learned that K.T. was the assigned attorney on any matter in his courtroom.

Thereafter, according to K.T.'s affidavit, respondent recused himself from at least 27 cases in which she represented the defendants. He "dismissed" her or ordered her to "stand down" in at least 13 additional cases. She states that in several of these cases she had significant contact with the client, the client's family members, and potential witnesses prior to being removed by the respondent.

On June 3, 2008, defendant Ramiro Nevarez appeared in respondent's courtroom for a hearing on his motion to quash arrest and suppress evidence. The motion and the supporting memorandum of law had been prepared and filed by K.T. The subpoenas *duces tecum* and witness subpoenas were prepared by K.T. In addition, orders that Nevarez participate in the Cook County Department of Corrections drug treatment program and

that he be examined by a representative of the TASC program were prepared by K.T. and signed by respondent. K.T.'s affidavit states that she had interviewed a potential witness in this case, visited the scene of the alleged crime, referred the matter for expert witness analysis of the fingerprint evidence, and had significant client contact via telephone. According to respondent, the memorandum of law prepared by K.T. in support of the motion improperly cited a 1992 decision of this court that had been superseded in 1999 by an amendment to the Illinois Municipal Code.

When asked if he had a lawyer, defendant Nevarez said that he was represented by K.T. An unidentified Ms. O'Brien stated, "No, Judge, he has [B.H.], because on 05/28 you appointed [B.H.]" Respondent informed the defendant that he "can't pick a free lawyer." B.H. stated that he was not ready for the hearing at that time but that he would be ready if the matter could be passed. The matter was passed and recalled later that day. The hearing went forward with B.H. representing the defendant. The motion was denied.

On June 5, 2008, defendant Armando Gonzalez appeared in respondent's courtroom for a hearing on his motion to quash arrest and suppress evidence. Respondent asked Gonzalez if he had a lawyer. He responded, "Yes, I do, [K.T.] She's been assigned to my case." Respondent informed the defendant that "she's no longer assigned to your case" and "assigned" another assistant public defender to represent him. The matter was continued to July 7, 2008, at the request of the newly assigned assistant public defender. On July 7, 2008, K.T. again appeared with Gonzalez. Respondent recused himself. The case was assigned to another judge and eventually dismissed after the assigned judge granted defendant's motion to quash arrest and suppress evidence.

The record before this court contains transcripts of eight of the cases in which respondent ordered K.T. to "stand down." In none of these cases did respondent make a record of the reason for his removal of K.T. Respondent states that in each case, the matter was continued to allow newly appointed defense counsel time to consult with the client and to prepare the case.

On June 10, 2008, petitioner's motion for leave to file a petition for a writ of *mandamus* or a writ of prohibition was filed with this court. Thereafter, respondent recused himself from all matters assigned to K.T. According to Roe-Taylor's affidavit, these cases included "matters where he had presided over pre-trial motions, trials and matters of violation of probation, on which he was the sentencing judge." Further, the recusals "caused substantial delays to previously appointed clients' cases and representation."

Because these actions effectively barred K.T. from appearing or practicing in respondent's courtroom, Roe-Taylor assigned her to another felony courtroom. According to Roe-Taylor's affidavit, the reassignment was "not due to any agreement with or request from" the presiding judge or respondent, but was "due to the continuing refusal by [respondent] to hear any cases involving [K.T.]"

Respondent's affidavit states that K.T. was transferred from his courtroom to a different courtroom "pursuant to an agreement between the public defender's office and the Honorable Edmund Ponce de Leon, Presiding Judge of the Circuit Court of Cook County, Fourth Municipal District." He further states that petitioner's brief "discusses several instances in which I ordered [K.T.] to stand down and another assistant public defender assigned to my courtroom to represent a defendant because of my concerns over her ability to provide adequate representation to felony defendants."

As noted above, however, the transcripts of eight such instances do not contain any indication of the nature of respondent's "concerns." Finally, respondent states that K.T. is the "only attorney I have ever directed to stand down from representing a client during my judicial career."

The affidavit of the presiding judge states that "[b]ecause of concerns expressed to me by [respondent] and other judges about the ability of public defender [K.T.] to provide adequate representation to felony defendants, I met with officials of the public defender's office and they ultimately agreed to assign her to a different courtroom. [She] is no longer assigned to [respondent's] courtroom." However, K.T. is presently assigned to a felony courtroom.

## ISSUES PRESENTED

The issues presented in the petition are whether respondent has the authority to refuse to allow an assistant public defender to represent clients in his courtroom, to remove an assistant public defender from representation of a defendant, or to assign a specific assistant public defender to represent a defendant in an individual case.

## MOOTNESS

When intervening events preclude a reviewing court from granting effective relief to a complaining party, the matter is rendered moot. *Felzak v. Hruby*, 226 Ill. 2d 382, 392 (2007).

Respondent argues that this case became moot when K.T. was assigned to another felony courtroom. His affidavit and the affidavit of the presiding judge aver that the reassignment was the result of an agreement with petitioner's office.

Petitioner responds that the issues raised in his petition are not moot because no such agreement was

reached. He relies on the statement in Roe-Taylor's affidavit that the reassignment of K.T. to another felony courtroom was not the result of an agreement to resolve the dispute.

We conclude the conflicting accounts regarding the existence of an agreement are due to the different perspectives of the parties. Respondent's affidavit asserts that there was such an agreement, but he was not present at the meetings between the presiding judge and Roe-Taylor, so his assertion is not based on personal knowledge. The presiding judge likely perceives that he achieved a resolution acceptable to both parties when K.T. was reassigned. Roe-Taylor perceives that her reassignment of K.T. was merely an acquiescence to the *status quo*, pending resolution of the petition then pending before this court.

We believe that under the circumstances, the reassignment of K.T. was a wise and proper use of the resources of the public defender's office and the Cook County circuit court and that it was in the best interests of the public served by all parties to this case. However, the reassignment of K.T. did not moot the underlying issue in this case—the scope of a judge's authority to remove or to assign individual public defenders in individual cases. Respondent could have mooted this issue by reaching an accord with petitioner regarding their respective roles in the process of assigning assistant public defenders in individual cases. However, the issues raised in the petition are not mooted by the existence of a stalemate that caused petitioner to adapt to the situation created by the challenged conduct.

We conclude that this matter is not moot and, therefore, it is not necessary to employ an exception to the mootness doctrine to reach the merits of the issues.

## STANDARD OF REVIEW

Petitioner suggests that because this is an original

action under Rule 381, this court is deciding the issue *de novo*, in its supervisory and administrative capacity.

Respondent suggests that the abuse of discretion standard of review is appropriate, arguing further the extraordinary writs of *mandamus* and prohibition are not proper to address a mere abuse of discretion.

We conclude that *de novo* review is appropriate, given the issues framed by the petition. Petitioner does not ask this court to review respondent's exercise of discretion in any individual case. Rather, he asks this court to determine whether a judge has the authority to remove a public defender from a case and assign the case to another public defender. As will be demonstrated below, the answer to that question is that a judge has such authority under certain circumstances but that such circumstances have not been shown in the present case.

## ANALYSIS

Petitioner asserts that respondent's actions are "outside his judicial authority, an invasion of the attorney-client relationship, a violation of the Public Defender Act, and contrary to established case law."

Respondent characterizes this claim as "a broad attack on the judiciary's well-established discretion to remove attorneys when necessary to protect criminal defendants' Sixth Amendment right to effective assistance of counsel or because of the requirements of the court's calendar."

### Attorney-Client Relationship

Petitioner asserts that respondent's removal of K.T. in 15 cases "create[d] a Sixth Amendment violation for each client of the Public Defender affected" by interfering with an established attorney-client relationship. He argues that if the attorney removed without explanation in case after case were "an associate of a large law firm" rather than a member of the public defender's office, it

would be clear that the judge's actions "would run afoul of the Sixth Amendment and the right to counsel of one's own choice." See *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144, 165 L. Ed. 2d 409, 416, 126 S. Ct. 2557, 2561 (2006) (right of a defendant who does not require appointed counsel to choose who will represent him is an element of the sixth amendment right to counsel). Although indigent defendants are not entitled to choose which assistant public defender will represent them, petitioner's position is that removal of K.T. after she had been assigned to represent these defendants and after that representation had begun is the functional equivalent of depriving those defendants of the attorney of their choice.

Respondent answers that the individual defendants affected can assert their sixth amendment rights on direct appeal if they are ultimately convicted. Thus, he argues, even if the removal of K.T. was improper, the remedy lies in the appellate process in the individual cases, not in the issuance of an extraordinary writ by this court.

We note, however, that the dispute before us is not about the rights of the affected defendants. Rather, it is a dispute between two public officials over the scope of the authority granted to each by constitution and statute.

### Constitutional Authority

Respondent argues that not only does he have the authority to remove a defense attorney, he has an obligation to do so when necessary to ensure that a criminal defendant receives the level of representation guaranteed by the sixth amendment. He notes that "there are circumstances where a judge is authorized to remove appointed counsel in order to protect a defendant's Sixth Amendment right to effective assistance of counsel, including situations in which incapacity, impairment or incompetence precludes an attorney from providing effective assistance."

He cites several cases for the proposition that a judge may disqualify defense counsel when there is serious potential for a conflict of interest. See *Wheat v. United States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 149, 108 S. Ct. 1692, 1697 (1988) (sixth amendment right to choose one's own counsel does not permit a defendant to "insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party"); *People v. Holmes*, 141 Ill. 2d 204, 217-18 (1990) (sixth amendment right to counsel of one's choosing is limited by need to disqualify chosen counsel if a conflict of interest exists); *People v. House*, 377 Ill. App. 3d 9, 16 (2007) (conflict of interest of defendant's chosen counsel warranted disqualification).

A judge may also remove defense counsel when the demands of the court's calendar necessitate the trial be held when current counsel is unavailable. See *Gonzalez-Lopez*, 548 U.S. at 152, 165 L. Ed. 2d at 422, 126 S. Ct. at 2566 (distinguishing this case where defendant was deprived of his choice of counsel from cases where court makes "scheduling and other decisions that effectively exclude a defendant's first choice of counsel"); *Morris v. Slappy*, 461 U.S. 1, 11-12, 75 L. Ed. 2d 610, 618-19, 103 S. Ct. 1610, 1615-16 (1983) (defendant's sixth amendment right to counsel was not violated when trial court appointed senior trial attorney from public defender's office to replace deputy public defender who was hospitalized for emergency surgery six days before trial); *People v. Spurlark*, 67 Ill. App. 3d 186, 198-99 (1978) (after allowing multiple continuances due to defense counsel's unavailability for trial, trial court did not abuse its discretion by requiring defendant to proceed to trial with newly appointed attorney where defense counsel of defendant's choosing was again unavailable for trial).

Removal may also be necessary when counsel is intoxicated. See *People v. Giles*, 209 Ill. App. 3d 265, 270

(1991) (trial judge protected defendant's right to a fair trial by declaring a mistrial and dismissing defendant's original counsel, who admitted that he was under the influence of alcohol during trial).

Finally, a judge may remove defense counsel whose performance is so inadequate that the defendant is not receiving the level of assistance of counsel guaranteed by the sixth amendment. See *People v. Johnson*, 192 Ill. 2d 202, 207 (2000) (ordering reassignment of postconviction appeal to a staff attorney in the Capital Litigation Division of the Office of the State Appellate Defender for re-briefing where the brief filed was "so fundamentally deficient that it precludes review"). See also *Davenport v. State*, 283 Ga. 29, 30-33, 656 S.E.2d 514, 516-17 (2008) (removal of defense counsel proper where trial court concluded that counsel was not performing competently).

Because the cited authorities "clearly recognize that a trial judge is vested with the discretion to remove defense counsel in criminal cases when necessary to protect the defendant's right to effective assistance of counsel," and because his actions were "motivated by a desire to protect the defendants' rights to fair trials and competent counsel," respondent argues that his actions were entirely justified.

The principle that a judge has the discretion to remove defense counsel for the reasons noted above is not in dispute. Respondent clearly has such authority in the proper case. However, the present situation is distinguishable from the cases cited by respondent in two significant respects.

First, in each of the cited cases, the judge who removed defense counsel made a record that was sufficient for a reviewing court to determine whether circumstances justified the removal. In none of the eight transcripts provided to this court is the sixth amendment right to counsel mentioned by respondent and in no case

does the record show that there was a conflict of interest, that the court's calendar necessitated appointment of different defense counsel, that K.T. was intoxicated or otherwise impaired, or that her performance was inadequate. Because respondent made no record, it is impossible for this court to determine whether respondent was acting to ensure adequate representation of these defendants or for some other purpose.

Second, petitioner is not asserting that respondent improperly removed defense counsel in an individual case, but that he did so repeatedly and without explanation. Further, respondent's decisions to recuse himself in over 50 cases rather than allow K.T. to represent a defendant in his courtroom are entirely unreviewable although they clearly interfered with petitioner's managerial responsibilities.

We conclude that the underlying dispute cannot be resolved on the basis of either party's assertion of the need to protect the sixth amendment rights of the affected defendants.

### Statutory Authority

Petitioner argues that respondent's actions violate the Counties Code (Code) (55 ILCS 5/3—4000 *et seq.* (West 2006)). He relies, in part, on the "unique situation" of Cook County, which he asserts allows the Cook County public defender to operate his office independently of the judiciary, to a degree not permitted in the rest of the state.

Until 1991, each public defender in the state was appointed by a majority vote of the circuit judges in the judicial circuit. Ill. Rev. Stat. 1989, ch. 34, par. 3—4004. A 1991 amendment to the Code altered that practice in counties with a population of over 1 million. Thus, the public defender in Cook County is "appointed to the position by the President [of the county board] with the advice and consent of the Board [of commissioners]." 55

ILCS 5/3—4004.1 (West 2006). In all other counties, the public defender continues to be appointed by a majority vote of the circuit judges. 55 ILCS 5/3—4004 (West 2006).

Similarly, as a result of the 1991 amendments to the Code, the public defender in counties with a population of over 1 million "shall appoint assistants, all duly licensed practitioners, as that Public Defender shall deem necessary for the proper discharge of the duties of the office, who shall serve at the pleasure of the Public Defender." 55 ILCS 5/3—4008.1 (West 2006). In less populous counties, the public defender has the power to appoint assistants "in the manner directed by the judges." These assistant public defenders also "serve at the pleasure of the Public Defender." 55 ILCS 5/3—4008 (West 2006).

Although the 1991 amendments to the Code altered the manner in which the public defender is appointed in Cook County and the manner in which assistant public defenders are selected there, the duties of the public defender's office with respect to the representation of criminal defendants do not vary from county to county: "The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." 55 ILCS 5/3—4006 (West 2006). Therefore, to the extent the Act is implicated in this case, it is not because of any circumstance that exists only in Cook County.

The unique circumstances of Cook County aside, petitioner claims that respondent has violated the Act in several ways—by refusing to allow a particular assistant public defender to represent defendants when she was assigned by petitioner to respondent's courtroom, by removing the assistant public defender from representation of defendants to whom she had already been as-

signed, and by selecting another assistant public defender to represent these clients.

Respondent replies that the Act gives petitioner "the authority to hire and discharge assistants, but it does not preclude trial judges from removing individual attorneys from cases in particular where necessary to protect a criminal defendant's right to a fair trial and to competent counsel or because the demands of the court's calendar require a case to proceed when counsel is unavailable." He further states that he "did not encroach upon the Public Defender's statutory authority."

Under the Code, the circuit court has the authority to direct the public defender to represent an indigent defendant. 55 ILCS 5/3—4006 (West 2006) (the public defender shall act as the attorney for an indigent defendant "when directed by the court"). That is, the court appoints the office of the public defender to act as the attorney for an indigent defendant. The court does not appoint an individual assistant public defender. Once appointed, the public defender has the statutory authority and responsibility of assigning assistant public defenders to represent individual defendants whom the public defender's office has been directed to represent.

We note, however, that assistant public defenders are often assigned to a specific courtroom by the public defender for the purpose of representing, at least initially, any indigent defendant who may appear in that courtroom. Thus, in the Scianna case, when the defendant requested the appointment of counsel, K.T. responded that it was her "week." Petitioner and Roe-Taylor had assigned K.T. to this courtroom with the expectation that when the judge found it proper to direct the public defender's office to represent an indigent defendant, the assistant public defender for that week would be assigned the case.

However, in the present situation, respondent re-

moved K.T. from representing clients to whom she had already been assigned and on whose behalf she had already performed significant work. He refused to assign her to represent defendants even when she was the person designated by petitioner to do so. And after removing or refusing to assign K.T., he selected other members of petitioner's staff to represent several clients.

We conclude that because assistant public defenders serve at the pleasure of the public defender (55 ILCS 5/3—4004, 3—4004.1 (West 2006)), the public defender has the sole statutory authority to make work assignments to the assistant public defenders. Thus, absent a finding of contempt or other specific cause, it is beyond the scope of judicial authority for an individual judge to reject an assistant public defender assigned to his courtroom, to refuse to allow an assistant public defender to represent defendants when she has been assigned to do so, or to remove an assistant public defender from representation of a defendant.

Respondent's reassignment of K.T.'s former clients to other assistant public defenders presents a slightly different question. At oral argument, counsel for respondent stated that it was "logical to assume" that because the assistant public defenders to whom he assigned cases after removing K.T. were assigned to his courtroom by petitioner, the judge did not assume the authority of petitioner by assigning cases to them.

Counsel for petitioner responded that on one occasion when the judge removed K.T., Roe-Taylor was present in the courtroom, yet the judge assigned the case to B.H. when Roe-Taylor could have taken the case herself or made the reassignment. This, he argued, was an improper assumption of the statutory authority of the public defender.

We conclude that it is not within the authority of a judge to assign specific cases to specific assistant public

defenders. Such actions usurp the statutory authority of the public defender to hire and manage his staff. When the public defender assigns several assistant public defenders to a particular courtroom, it is not a delegation of his authority to the judge who presides there to choose specific assistant public defenders to represent individual defendants. Rather, it is an assignment to the assistant public defenders to step up as directed by the public defender (who apparently employs a week-by-week rotation) when the court finds it necessary to direct the public defender's office to represent an indigent defendant.

### Inherent Judicial Authority

Statutory authority aside, respondent argues that he has the inherent authority to manage his courtroom and the court's calendar. Petitioner responds by citing *In re General Order of March 15, 1993*, 258 Ill. App. 3d 13 (1994).

In *In re General Order*, a circuit court judge announced from the bench that a particular assistant public defender was barred from appearing in his courtroom on any future case. This announcement followed a particularly contentious probable cause hearing in which the judge warned the attorney several times that her conduct bordered on contempt. *In re General Order*, 258 Ill. App. 3d at 14-17.

The appellate court rejected the suggestion that the judge was exercising "his inherent authority to control his courtroom and to ensure that attorneys appearing before him exhibit[ed] proper respect for the authority of the court" (*In re General Order*, 258 Ill. App. 3d at 17), stating that "the trial court's inherent power to control its courtroom and maintain the proper decorum extends no further than its ability to find someone in contempt." *In re General Order*, 258 Ill. App. 3d at 17.

The appellate court also considered whether a judge

has the authority under section 6 of the Attorney Act (705 ILCS 205/6 (West 1992) ("any judge of a Circuit Court shall, for like cause, have the power to suspend any attorney or counselor at law from practice in the court over which he presides, during such time as he may deem proper")), to suspend an attorney from practice in a particular circuit or courtroom. The appellate court found this section unconstitutional on the basis that the Illinois Supreme Court has the sole authority to impose disciplinary sanctions on attorneys, which it exercises through the mechanism of the Attorney Registration and Disciplinary Commission. *In re General Order*, 258 Ill. App. 3d at 21.[1] In reaching this result, the appellate court relied on this court's decision in *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485 (1988).

In *Finley*, this court considered the validity of a circuit court rule intended to enforce compliance with certain rules of professional responsibility. After noting that this court " 'possesses the inherent and exclusive power to regulate the practice of law in this State and to sanction or discipline the unprofessional conduct of attorneys admitted to practice before it' " (*Finley*, 119 Ill. 2d at 493, quoting *In re Mitan*, 119 Ill. 2d 229, 246 (1987)), this court stated that "the power to prescribe rules governing attorney conduct, and to discipline attorneys for violating those rules, rests solely in this court" (*Finley*, 119 Ill. 2d at 494). Thus, the circuit court "was without authority to promulgate" the local rule at issue, "as it intrude[d] upon this court's exclusive judicial authority." *Finley*, 119 Ill. 2d at 495.

Respondent attempts to distinguish *In re General Order* on the basis that he did not enter a general order banning an assistant public defender from appearing in his courtroom. Thus, he asserts that he has not en-

---

[1]This court did not review the appellate court's holding on the constitutionality of this provision.

croached upon this court's exclusive power to discipline attorneys.

Although respondent did not enter a general order or purport to suspend K.T. from the practice of law in his courtroom, he did remove K.T. from representing at least 15 defendants and he recused himself in over 50 other cases. The effect on the public defender's ability to manage his office and his staff and on the disposition of the caseload in the Fourth Municipal District was indistinguishable from the entry of a general order.

In the absence of a finding of contempt or other cause, the actions taken by respondent were not within his inherent power to manage his courtroom and calendar. Rather, they were directed at an individual attorney and infringed upon the statutory authority of petitioner.

### Case Law From Other Jurisdictions

Finally, petitioner finds support for his position in the case law from other jurisdictions. Respondent distinguishes these cases and notes that these decisions from our sister states are entitled to little weight.

As we have found no constitutional or statutory authority for respondent's actions in this case, we do not find it necessary to examine additional authority offered in support of petitioner's position.

### REMEDY

When he took the actions complained of, respondent did not first find K.T. in direct criminal contempt. See *People v. Simac*, 161 Ill. 2d 297, 305 (1994) (direct criminal contempt is conduct that is calculated to embarrass, hinder, or obstruct the court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute). Thus, he was not acting pursuant to the court's inherent power to punish conduct that offends the dignity of the court.

If he was acting pursuant to his responsibility under the sixth amendment to ensure adequate representation for criminal defendants, he failed to make a record sufficient to justify his actions.

Further, the lack of an articulated reason on the record each time he removed K.T. from representing a client suggests that he was not exercising discretion on a case-by-case basis. Thus, he acted in a manner that was inconsistent with the responsibilities assigned to the public defender by statute.

Petitioner seeks a writ of *mandamus* or prohibition "to stop [respondent] from continuing with his removal of Assistant Public Defenders" and to "prevent [respondent], or any other judge, from standing in the shoes of the Public Defender and choosing who shall represent any particular client." (We note that any remedy this court might grant would be directed only at the respondent and not to "any other judge.")

Respondent argues that neither writ is justified under these circumstances because both are "inappropriate to address exercises of judicial discretion."

We explained the purpose of the writ of *mandamus* in *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445, 449 (2007):

> "A writ of *mandamus* may be awarded if the petitioner establishes a clear legal right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ, as well as the lack of other adequate remedies. *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 465 (2004). Although *mandamus* generally provides affirmative rather than prohibitory relief (*People ex rel. Waller v. McKoski*, 195 Ill. 2d 393, 398 (2001)), it can be used to compel the undoing of an act (*Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997))."

In the present case, there is no specific act that petitioner seeks to compel respondent to perform and no

specific act that petitioner seeks to have undone. Thus, a writ of *mandamus* is not appropriate.

In *Stralka*, 226 Ill. 2d at 449-50, we also explained the purpose of the writ of prohibition:

"[A] writ of prohibition may be used to ' "prevent a judge from acting where he has no jurisdiction to act or to prevent a judicial act which is beyond the scope of a judge's legitimate jurisdictional authority." ' *People ex rel. Foreman v. Nash*, 118 Ill. 2d 90, 97 (1987), quoting *Daley v. Hett*, 113 Ill. 2d 75, 80 (1986). There are four requirements that must be met before a writ of prohibition may be issued: (1) the action to be prohibited must be judicial or quasi-judicial in nature; (2) the jurisdiction of the tribunal against which the writ issues must be inferior to that of the issuing court; (3) the action prohibited must be outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority; and (4) the petitioner must be without any other adequate remedy. *Zaabel v. Konetski*, 209 Ill. 2d 127, 131-32 (2004)."

In the present case, respondent has the "jurisdiction" (in the general sense of "authority" or "power," rather than the limited sense of subject matter or personal jurisdiction) to remove a public defender from representing an individual defendant if the removal is necessitated by documented sixth amendment concerns or a finding of contempt. Thus, while he may have acted improperly when he repeatedly removed K.T., he did not act without "legitimate authority."

Similarly, his assignment of her cases to other assistant public defenders was improper, but petitioner's assignment of those assistants to respondent's courtroom evinced his willingness to have those assistants at least temporarily assigned to cases arising there. A writ of prohibition is not justified under these circumstances.

Finally, we have held "that *mandamus*-type relief may be awarded when the issues involved are of great importance to the administration of justice even if all the normal criteria for its issuance are not satisfied." *Stralka*,

226 Ill. 2d at 450, citing *People ex rel. Carey v. White*, 65
Ill. 2d 193, 197 (1976). Because the present case involves
one individual judge and the removal of one individual
assistant public defender, we do not find it to be such a
case.

In the end, we elect to utilize a supervisory order.

"As a general rule, this court will issue a supervisory order
only when the normal appellate process will not afford
adequate relief and the dispute involves a matter important
to the administration of justice, or intervention is neces-
sary to keep an inferior tribunal from acting beyond the
scope of its authority. [Citation.] We have repeatedly noted
that supreme court supervisory orders are nonpreceden-
tial." *Cinkus v. Village of Stickney Municipal Officers
Electoral Board*, 228 Ill. 2d 200, 220-21 (2008).

As noted above, the appellate process available to the
affected criminal defendants will not resolve the dispute
between these parties over the scope of their respective
responsibilities with regard to the removal and assign-
ment of assistant public defenders. And, because this
dispute involves only these two parties and is not
symptomatic of a more widespread concern, it is not
necessary to issue a writ with precedential effect.

Thus, we order the respondent, when he determines
that an indigent defendant is entitled to appointed
counsel, to assign the case to the assistant public
defender then assigned to his courtroom for that purpose.
Further, when he finds it necessary to exercise his
constitutional duty and authority to remove an attorney
for contempt or other cause, we order respondent to
make a record of the factual basis for this action that
will be sufficient for meaningful appellate review. In each
such case, the cause asserted must demonstrate a nexus
to the representation of the particular client by the
particular attorney. Finally, if it should become necessary
to remove an assistant public defender from representa-
tion of an individual defendant, we direct respondent
either to allow petitioner to reassign the case or to follow

a procedure for reassignment established by the petitioner.

*Order entered.*